THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | ) | Chapter 11 |
| In re: | ) |  |
|  | ) |  |
| NEW GULF RESOURCES, LLC, *et al.* | ) | Case No. 15-12566 (BLS) |
|  | ) |  |
| Debtors.[1] | ) | Joint Administration Pending |
|  | ) |  |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

C. Luckey McDowell
Ian E. Roberts
Meggie S. Gilstrap
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

M. Blake Cleary (No. 3614)
Ryan M. Bartley (No. 4985)
Justin P. Duda (No. 5478)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 N. King Street
Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*Proposed Co-Counsel to Debtors and Debtors in Possession*

Dated: December 17, 2015

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  NGR Holding Company LLC (1782), New Gulf Resources, LLC (1365); NGR Finance Corp. (5563) and NGR Texas, LLC (a disregarded entity for tax purposes).  The Debtors' mailing address is 10441 S. Regal Boulevard, Suite 210, Tulsa, Oklahoma 74133.

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS ........................................ 1

    A.   Definitions.......................................................................................................... 1

    B.   Interpretation, Application of Definitions, and Rules of Construction........................ 16

    C.   Computation of Time.......................................................................................... 17

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP LOAN CLAIMS, FEE CLAIMS, AND
PRIORITY CLAIMS ........................................................................... 17

    A.   Administrative Claims (Other Than Fee Claims). ....................................................... 17

    B.   DIP Loan Claims................................................................................................ 18

    C.   Fee Claims. ....................................................................................................... 19

    D.   Priority Tax Claims............................................................................................. 19

    E.   U.S. Trustee Fees. .............................................................................................. 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS .......................................................................................... 20

    A.   Classification of Claims and Equity Interests........................................................... 20

    B.   Distribution Record Date. ................................................................................... 20

    C.   Summary of Classification and Class Identification.................................................. 21

    D.   Treatment of Classified Claims and Equity Interests. ............................................... 21

    E.   Special Provision Regarding Unimpaired and Reinstated Claims.............................. 25

    F.   Voting of Claims............................................................................................... 26

    G.   Nonconsensual Confirmation............................................................................. 26

    H.   Elimination of Vacant Classes ............................................................................ 26

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN................................... 26

    A.   Operations Between the Confirmation Date and Effective Date ................................ 26

    B.   Issuance of New Equity Interests......................................................................... 26

    C.   New First Lien Notes. ........................................................................................ 27

    D.   Rights Offering. ................................................................................................ 27

    E.   Exemption from Registration............................................................................... 28

    F.   Cancellation of Certain Indebtedness, Agreements, and Existing Securities. .............. 28

    G.   Intercompany Interests........................................................................................ 29

    H.   Continued Corporate Existence and Vesting of Assets. ............................................ 29

    I.   Retention of Avoidance Actions........................................................................... 30

    J.   Preservation of Causes of Action.......................................................................... 31

    K.   Claims Incurred After the Effective Date. ............................................................. 31

L.    Corporate Action...................................................................................................... 31

ARTICLE V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
        REORGANIZED DEBTOR ............................................................................ 32

A.    Organizational Documents......................................................................................... 32

B.    Appointment of Officers and Directors. .................................................................... 32

C.    Reorganized NGR Holding Management Incentive Plan........................................... 33

D.    Indemnification of Directors, Officers, and Employees. ........................................... 33

ARTICLE VI. CONFIRMATION OF THE PLAN ................................................................. 34

A.    Conditions to Confirmation. ...................................................................................... 34

B.    Waiver of Conditions Precedent to Confirmation. ..................................................... 34

C.    Binding Effect ............................................................................................................ 35

D.    Vesting of Assets. ...................................................................................................... 35

ARTICLE VII. SETTLEMENT,  RELEASE, INJUNCTION AND RELATED PROVISIONS
        ......................................................................................................................... 35

A.    General Settlement of Claims and Interests................................................................ 35

B.    Subordination of Claims ............................................................................................ 36

C.    Discharge of the Debtors. .......................................................................................... 36

D.    Release of Liens.......................................................................................................... 37

E.    Releases by the Debtors. ............................................................................................ 37

F.    Releases by Certain Holders of Claims and Equity Interests. .................................... 38

G.    Exculpation. ............................................................................................................... 39

H.    Injunction. .................................................................................................................. 39

I.    Injunction Against Interference with Plan. ................................................................ 40

J.    Limitations on Exculpations and Releases. ................................................................ 40

K.    Preservation of Insurance........................................................................................... 41

ARTICLE VIII. DISTRIBUTIONS UNDER THE PLAN....................................................... 41

A.    Procedures for Treating Disputed Claims.................................................................. 41

B.    Allowed Claims. ........................................................................................................ 42

C.    Allocation of Consideration. ...................................................................................... 44

D.    Estimation. ................................................................................................................. 44

E.    Insured Claims. .......................................................................................................... 45

F.    Setoffs and Recoupments........................................................................................... 45

G.    Rights and Powers of Disbursing Agent .................................................................... 45

ARTICLE IX. EXECUTORY CONTRACTS ......................................................................... 46

A.    Assumption of Executory Contracts. ......................................................................... 46

01:18082857.1

2

B.   Cure Claims. ............................................................................................... 46

C.   Reservation of Rights ................................................................................... 48

D.   Assignment. ................................................................................................. 48

E.   Insurance Policies. ....................................................................................... 49

F.   Post-Petition Contracts and Leases. ............................................................ 49

G.   Compensation and Benefit Programs ........................................................... 49

ARTICLE X. RETENTION OF JURISDICTION .................................................... 50

ARTICLE XI. EFFECTIVENESS OF THE PLAN ................................................... 52

A.   Conditions Precedent to Effectiveness ......................................................... 52

B.   Waiver of Conditions Precedent to Effectiveness. ....................................... 53

C.   Effect of Failure of Conditions. ................................................................... 53

D.   Vacatur of Confirmation Order .................................................................... 53

E.   Modification of the Plan. .............................................................................. 53

F.   Revocation, Withdrawal, or Non-Consummation. ....................................... 54

ARTICLE XII. MISCELLANEOUS PROVISIONS .................................................. 54

A.   Immediate Binding Effect ............................................................................ 54

B.   Governing Law. ............................................................................................ 55

C.   Filing or Execution of Additional Documents .............................................. 55

D.   Term of Injunctions or Stays ........................................................................ 55

E.   Withholding and Reporting Requirements. ................................................... 55

F.   Exemption From Transfer Taxes. ................................................................. 55

G.   Dissolution of Creditors' Committee ........................................................... 56

H.   Severability .................................................................................................. 56

I.   Plan Supplement. ......................................................................................... 56

J.   Notices. ........................................................................................................ 56

K.   Conflicts. ...................................................................................................... 57

01:18082857.1

## INTRODUCTION

NGR Holding Company LLC and its affiliated Debtors jointly propose the following plan of reorganization under section 1121(a) of chapter 11 of title 11 of the United States Code. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Equity Interests in each Debtor pursuant to the Bankruptcy Code. The Debtors seek to consummate the restructuring on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH INFORMATION YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.  Definitions.

Unless otherwise defined herein, the following terms shall have the respective meanings set forth below:

1.  *Accrued Professional Compensation*: means, at any given time, and regardless of whether such amounts are billed or unbilled, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services, and reimbursement of expenses by any Professional that the Court has not, as of the Effective Date, denied by Final Order (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount), (ii) such fees and expenses are allowed pursuant to sections 327, 328, 331, 503(b) or 1103(a) of the Bankruptcy Code, and (iii) after applying the remaining balance of any retainer that has been provided by the Debtors to such Professional. To the extent the Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.  *Ad Hoc Committee*: means the ad hoc committee of certain holders of Second Lien Notes represented by Stroock & Stroock & Lavan LLP and Richards, Layton & Finger, PA.

3.      *Administrative Claim*: means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary costs and expenses of preserving the Estates, (ii) any actual and necessary costs and expenses of operating the Debtors' businesses during the Chapter 11 Cases, (iii) any indebtedness or obligations assumed by the Debtors during the Chapter 11 Cases in connection with the conduct of its businesses, (iv) all compensation and reimbursement of expenses of Professionals to the extent awarded by the Court, (v) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, (vi) any Claim for goods delivered to the Debtors within twenty days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code, and (vii) all Transaction Expenses.  For the avoidance of doubt, Administrative Claims includes the DIP Loan Claims.

4.      *Allowed*: means with respect to any Claim, (i) following the Claims Objection Deadline, any Claim as to which no objection or request for estimation has been filed prior to the Claims Objection Deadline, (ii) a Claim that has been expressly allowed by Final Order, (iii) a Claim as to which the Debtors (with the prior consent of the Requisite Supporting Noteholders) or the Reorganized Debtors expressly agree to the amount, priority, and allowance thereof in writing, or (iv) a Claim that is expressly allowed pursuant to the terms of this Plan. If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.  For the avoidance of doubt, any Claim that was required to be filed by the Claims Bar Date, but was not timely filed, shall not be Allowed, shall be deemed disallowed pursuant to the Bar Date Order, and the party asserting such Claim shall be forever barred, estopped and enjoined from asserting such Claim against the Debtors, the Reorganized Debtors, any affiliates of the Debtors or the Reorganized Debtors, or any of their respective property, and such Claim shall be deemed discharged as of the Effective Date, unless otherwise ordered by a Final Order of the Bankruptcy Court.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

5.      *Avoidance Actions*: means any and all actual or potential claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable Bankruptcy Code section, including Bankruptcy Code sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) or under similar or related state or federal statutes and common law, including fraudulent transfer laws (in each case, excluding any Causes of Action against the Released Parties, which, for the avoidance of doubt, are released under the Plan).

6.      *Backstop Agreement*: means that certain Backstop Note Purchase Agreement, dated as of December 15, 2015, between the Debtors and Persons party thereto as "Backstop Parties" thereunder (as may be amended, supplemented, or modified, from time to time, solely in accordance with the terms thereof).

7.      *Backstop Commitment Notes:* has the meaning given to it in the Backstop Agreement.

8.  *Backstop Parties*: has the meaning given to it in the Backstop Agreement.

9.  *Ballots*: means each of the ballots distributed with the Disclosure Statement to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

10.  *Bankruptcy Code*: means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

11.  *Bankruptcy Rules*: means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

12.  *Bar Date Order*: means the order establishing the Claims Bar Date.

13.  *Business Day*: means any day on which commercial banks are open for business, and not authorized to close, in New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

14.  *Cash*: means legal tender of the United States of America.

15.  *Causes of Action*: means any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, reimbursement claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on, or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (other than Avoidance Actions).  For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) all claims pursuant to sections 362, 510, 542, 543, 544 through 550, 552 or 553 of the Bankruptcy Code; (iv) all claims and defenses, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claims.

16.  *Chapter 11 Cases*: means the chapter 11 cases commenced by the Debtors.

17.  *Claim*: means a "claim," as such term is defined in section 101(5) of the Bankruptcy Code.

18.  *Claims Bar Date*: means such date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

01:18082857.1

3

19.     *Claims Objection Deadline*: means the first Business Day that is the later of (i) one-hundred eighty days after the Effective Date, (ii) as to Proofs of Claim filed after the applicable Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed, or (iii) such other later date the Court may establish upon a motion by the Debtors or the Reorganized Debtors, which motion shall be in form and substance satisfactory to the Requisite Supporting Noteholders and may be approved without a hearing and without notice to any party.

20.     *Claims Register*: means the official register of Claims maintained by the Notice and Claims Agent.

21.     *Class*: means a group of Claims or Equity Interests classified under the Plan.

22.     *Collateral*: means any property, or interest in property, of any of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or is not otherwise invalid under the Bankruptcy Code or applicable law.

23.     *Confirmation*: means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

24.     *Confirmation Date*: means the date of Confirmation.

25.     *Confirmation Hearing*: means the hearing held by the Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Court will consider confirmation of the Plan and other related matters.

26.     *Confirmation Order*: means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance consistent with the Restructuring Support Agreement, the Backstop Agreement and otherwise satisfactory to the Requisite Supporting Noteholders and the Debtors.

27.     *Court*: means (i) the United States Bankruptcy Court for the District of Delaware, (ii) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware, and (iii) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

28.     *Covered Action*: means any and all claims, liabilities or Causes of Action for any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date based on, arising under or in any way relating to the Debtors, their affiliates and former affiliates, their limited liability company agreements or other organizational documents, the Prepetition Reorganization, the Chapter 11 Cases, the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest of the Debtors or the Reorganized Debtors, the formulation, negotiation, preparation, dissemination, implementation, administration, solicitation, confirmation or consummation of the Chapter 11 Cases, the Plan, the Disclosure Statement, the Organizational Documents of the Reorganized

Debtors, the Restructuring Transactions, the Rights Offering, the sale or issuance of the Rights, the New Equity Interests or the New First Lien Notes or any other debt or security to be offered, issued, or distributed in connection with the Plan, the Restructuring Support Agreement and the Backstop Agreement and the transactions or arrangements contemplated thereby, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or the restructuring of the Debtors or Reorganized Debtors.

29.     _Creditors' Committee_: means the official committee of unsecured creditors of the Debtors, if any, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

30.     _Cure Claim_: means a Claim in an amount equal to all unpaid monetary obligations under an Executory Contract assumed by the Debtors required to be paid pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law, or such lesser amount as may be agreed upon by the parties under an Executory Contract, with the consent of the Requisite Supporting Noteholders.  Any Cure Claim to which the holder thereof disagrees with the priority and/or amount thereof as determined by the Debtors (with the consent of the Requisite Supporting Noteholders) shall be deemed a Disputed Claim under this Plan.

31.     _Debtors_: means, collectively NGR Holding Company LLC; New Gulf Resources, LLC; NGR Finance Corp.; and NGR Texas, LLC.

32.     _Dilution Events_: means the dilution of New Equity Interests (as applicable) as a result of (i) the conversion of New First Lien Notes to New Equity Interests in accordance with New First Lien Note Documents, and (ii) the awards issued under the Reorganized NGR Holding Management Incentive Plan.

33.     _DIP Agent_: has the meaning given in the DIP Loan Documents.

34.     _DIP Credit Agreement_: means that certain Senior Secured Debtor in Possession Credit Agreement, dated as of [•] between the Debtors and [•] (as may be amended, supplemented, or modified from time to time, solely in accordance with the terms thereof).

35.     _DIP Exchange_: means the surrender and exchange by the DIP Lenders of the principal portion of the DIP Loan Claims for New First Lien Notes, in accordance with and subject to the terms of this Plan.

36.     _DIP Exchange Notes_: means New First Lien Notes, in an amount equal to (x) $5,250,000, plus (y) the principal amount outstanding under the DIP Loans on the Effective Date, issued to the DIP Lenders in connection with the DIP Exchange, in each case, pursuant to the terms and conditions of this Plan (including Article II.B.2 of the Plan).

37.     _DIP Lenders_: means the Persons party to the DIP Credit Agreement as "Lenders" thereunder, and each of their respective successors and permitted assigns.

38. _DIP Loans_: means the senior secured, priming, super-priority term loans and all indebtedness and other obligations of the Debtors arising from or under the DIP Credit Agreement and the other DIP Loan Documents, including all "Obligations" as defined in the DIP Credit Agreement.

39. _DIP Loan Claims_: means all Claims held by the DIP Agent and the DIP Lenders on account of, arising under or relating to the DIP Loans, which includes, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses, costs and other charges of the DIP Agent and the DIP Lenders.

40. _DIP Loan Documents_: has the meaning given in the DIP Order.

41. _DIP Order_: means that certain order of the Bankruptcy Court approving the Debtors' entry into the DIP Loans, which order shall be in form and substance acceptable to the DIP Agent and the DIP Lenders.

42. _Disbursing Agent_: means the entity or entities, which may be a Reorganized Debtor, designated by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Requisite Supporting Noteholders, to distribute the Plan consideration and Distributions provided under the Plan. For the avoidance of doubt, the Indenture Trustees shall serve as Disbursing Agent for the holders of Allowed Claims under each respective indenture.

43. _Disclosure Statement_: means the Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, in furtherance of this Plan, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Requisite Supporting Noteholders.

44. _Disclosure Statement Motion_: means the motion filed by the Debtors, substantially contemporaneously with the filing of the Chapter 11 Cases, seeking entry of an order (i) scheduling an objection deadline and the Confirmation Hearing, (ii) approving the form and notice of the Confirmation Hearing, (iii) establishing procedures for objections to the Disclosure Statement and the Plan, (iv) approving the Disclosure Statement and Solicitation Procedures, and (v) granting related relief.

45. _Disclosure Statement Order_: means the order approving the Disclosure Statement, approving the Solicitation Procedures, scheduling the Confirmation Hearing and granting related relief, which order shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Requisite Supporting Noteholders and the Debtors.

46. _Disputed_: means, with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (i) that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or proof of Claim has been filed, (ii) as to which a proper request for payment or proof of Claim has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined by a Final Order, (iii) that is disputed in accordance with the provisions of the Plan, or (iv) that is otherwise subject to a dispute that is being adjudicated,

determined, or resolved, as of any relevant date, in accordance with applicable nonbankruptcy law, pursuant to Article VIII.A.3.

47.    *Distribution*: means a distribution or payment of property or consideration pursuant to the Plan, to take place as provided for herein.

48.    *Distribution Record Date*: means, for purposes of making distributions under the Plan, [•] Business Days following the Confirmation Date.

49.    *DTC*: means the Depository Trust Company.

50.    *Effective Date*: means the date which is the first Business Day selected by the Debtors and the Requisite Supporting Noteholders, on which (a) all of the conditions to the occurrence of the Effective Date specified in Article XI.A hereof have been satisfied or waived in accordance with Article XI.B hereof and (b) no stay of the Confirmation Order is in effect.

51.    *Entity*: means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

52.    *Equity Interest*: means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code), including, without limitation, any issued or unissued capital stock, common units, membership units, preferred units, or other equity, ownership or profits interests, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any equity, ownership or profits interests (including any stock-based performance award, incentive stock option, restricted stock, restricted stock unit, stock appreciation right, dividend equivalent, or other stock based award).

53.    *Equity Release Consent Notice*: means the notice distributed to holders of NGR Holding Equity Interests that provides the holder the option to not grant the voluntary releases provided for in Article VII.F of the Plan.

54.    *Estate*: means the estate of any Debtor created in the applicable Debtor's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

55.    *Exchange Act*: means the Securities Exchange Act of 1934, as amended.

56.    *Exculpated Parties*: means (i) each Debtor, (ii) each member of the Creditors' Committee in their capacity as such, (iii) each member of the Ad Hoc Committee, and (iii) the current and former officers, directors, managers, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives of the Debtors, any Creditor Committee and the Ad Hoc Committee.

57.    *Executory Contract*: means an executory contract or unexpired lease to which one or more Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

58.     *Existing Benefits Agreement*: means all employment, retirement, severance, indemnification, and similar or related agreements, arrangements, and policies with the members of the Debtors' management team or directors as of the Petition Date.

59.     *Fee Claim*: means a Claim for Accrued Professional Compensation.

60.     *Final Order*: means an order or judgment of the Court which has not been modified, amended, reversed, vacated, or stayed, and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

61.     *General Unsecured Claim*: means any Claim other than: (a) Secured Claims, Other Secured Claims, and Second Lien Notes Secured Claims; (b) Administrative Claims; (c) Fee Claims; (d) Priority Tax Claims; (e) Other Priority Claims; (f) Intercompany Claims; (g) NGR Equity Interests; (h) Subordinated PIK Notes Claims; and (i) U.S. Trustee Fees, and shall not include Claims that are Disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

62.     *General Unsecured Creditor Recovery Fund*: means $10 million in cash, less all amounts paid by the Debtors pursuant to the Royalty and Critical Trade Motion by the Confirmation Date.

63.     *Governmental Unit*: has the meaning set forth in section 101(27) of the Bankruptcy Code.

64.     *Impaired*: means, when used with respect to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

65.     *Indenture Trustees*: means the Second Lien Notes Indenture Trustee and the Subordinated PIK Notes Indenture Trustee, in their respective capacity as such.

66.     *Insured Claim*: means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

67.     *Intercompany Claims*: means any Claim held by any Debtor against any other Debtor.

68.     *Intercompany Interests*: means any Equity Interest held by any Debtor in any other Debtor.

69.     *Lien*: has the meaning set forth in section 101(37) of the Bankruptcy Code.

70.     *New Board*: means the board of directors or managers of Reorganized NGR Holding and Reorganized New Gulf to be constituted as of the Effective Date pursuant to Article V.B.

71.     *New Common Units*: means the limited liability company interests of Reorganized NGR Holding or Reorganized New Gulf, as determined by the Requisite Supporting Noteholders, and shall be as set forth in the Plan Supplement.

72.     *New Equity Interests*: means one or more forms of Equity Interests in either (i) Reorganized NGR Holding, or (ii) Reorganized NGR Holding and Reorganized New Gulf (as shall be determined by the Requisite Supporting Noteholders and as shall be set forth in the Plan Supplement), in each case, as issued on the Effective Date pursuant to the Plan and all of which shall be deemed validly issued, fully paid and non-assessable.

73.     *New First Lien Notes*: means the new 10%/12.5% Senior Secured Convertible PIK Toggle Notes that will be issued by Reorganized New Gulf on the Effective Date, on the terms set forth in the New First Lien Notes Documents, which notes shall be in the original aggregate principal amount equal to the sum of (i) the principal amount of the DIP Exchange Notes, and (ii) $55,000,000, and convertible into New Common Units, in each case, in accordance with and subject to the terms and conditions of the Backstop Agreement and this Plan.

74.     *New First Lien Notes Documents*: means, collectively, the New First Lien Notes, the New First Lien Notes Indenture and each other agreement, security agreement, pledge agreement, collateral assignments, mortgages, control agreements, guarantee, certificate, document or instrument executed and/or delivered in connection with any of the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, supplemented or replaced from time to time in accordance with the terms of the Restructuring Support Agreement, and which shall be in form and substance consistent with the Restructuring Support Agreement and the Backstop Agreement and otherwise satisfactory to the Requisite Supporting Noteholders.

75.     *New First Lien Notes Indenture*: means the indenture, to be effective as of the Effective Date, that will govern the New First Lien Notes, which shall be in form and substance consistent with the Restructuring Support Agreement and the Backstop Agreement and otherwise satisfactory to the Requisite Supporting Noteholders, and a draft form of which shall be included in the Plan Supplement.

76.     *NGR Holding*: means NGR Holding Company LLC, a Delaware limited liability company, which is treated as a corporation for U.S. federal income tax purposes.

77.     *NGR Holding Equity Interest*: means any Equity Interest in NGR Holding.

78.     *Organizational Documents*: means the limited liability or corporate organizational documents of each of the Reorganized Debtors, including, without limitation, any charter, bylaws, certificates of incorporation, certificates of formation, shareholder agreements, limited liability company agreements, voting agreements, each, as amended, amended and restated or otherwise, in each case, as shall be determined by the Requisite Supporting Noteholders, as shall be set forth in the Plan Supplement and as shall be in form and substance satisfactory to the Debtors and the Requisite Supporting Noteholders.

79.     *Notice and Claims Agent*: means Prime Clerk LLC.

80.     *Other Priority Claim*: means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim, or (ii) a Priority Tax Claim.

81.     *Other Secured Claim*: means any Claim that is Secured by operation of statute or otherwise, other than the DIP Loan Claims and the Second Lien Note Claims; provided, that any secured tax claim of a Governmental Unit shall be considered Other Secured Claims.

82.     *Person*: means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

83.     *Petition Date*: means the date on which the Debtors commenced the Chapter 11 Cases.

84.     *Plan*: means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, together with all addenda, exhibits, schedules, or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as the same may be amended, modified, or supplemented from time to time in accordance with the terms herein and in the Restructuring Support Agreement, as applicable.

85.     *Plan Supplement*: means the compilation of the draft forms of documents, schedules, and exhibits to the Plan to be filed with the Court on notice to parties-in-interest, including, but not limited to, the following, each of which must be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Requisite Supporting Noteholders: (i) the Reorganized NGR Holding LLC Agreement; (ii) the Organizational Documents, (iii) the Reorganized NGR Holding Management Incentive Plan; (iv) the Schedule of Rejected Executory Contracts and Unexpired Leases; and (v) the New First Lien Notes Indenture.  The Debtors shall file draft forms of the materials comprising the Plan Supplement no later than the Plan Supplement Filing Date.

86.    _Plan Supplement Filing Date_: means the date that is five calendar days prior to the deadline to object to the confirmation of the Plan.

87.    _Prepetition First Lien Agent_: means MidFirst Bank, a federally chartered savings association, in its capacity as administrative agent under the Prepetition First Lien Credit Agreement.

88.    _Prepetition First Lien Credit Agreement_: means that certain Credit Agreement dated as of June 12, 2014 among New Gulf Resources, LLC, as Borrower, MidFirst Bank, as Administrative Agent and L/C Issuer, and the other Persons party thereto as "Lenders" thereunder, together with all amendments, supplements or other modifications thereto.

89.    _Prepetition First Lien Lenders_: means the holders of notes and claims under the Prepetition First Lien Credit Agreement.

90.    _Prepetition Reorganization_: means the series of transactions pursuant to which, among other things, NGR Holdings, an entity classified as an association taxable as a corporation for U.S. federal income tax purposes, has become the parent entity of New Gulf through a merger transaction and NGR Holdings guaranteed the Second Lien Notes, as required under the Second Lien Note Indenture.

91.    _Priority Tax Claim_: means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) that is entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

92.    _Pro Rata_: means, with respect to (i) any Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims (including Disputed Claims) in the applicable Class or group of Classes, unless the Plan provides otherwise, and (ii) any Equity Interest, the proportion that the amount of such Equity Interest bears to the aggregate amount of all Equity Interests (including Disputed Equity Interests) in the applicable Class or group of Classes, unless the Plan provides otherwise.

93.    _Professional_: means any professional employed or retained in the Chapter 11 Cases by Final Order of the Court pursuant to sections 327 or 328 of the Bankruptcy Code.

94.    _Proof of Claim_: means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

95.    _Put Option Notes_: has the meaning set forth in Article IV.D. hereof.

96.    _Reinstated_: means, with respect to an Allowed Claim, (i) in accordance with section 1124(1) of the Bankruptcy Code, being treated such that the legal, equitable, and contractual rights to which such Claim entitles its holder are left unaltered, or (ii) if applicable under section 1124 of the Bankruptcy Code: (a) having all prepetition and postpetition defaults with respect thereto other than defaults relating to the insolvency or financial condition of the Debtors or their status as debtors under the Bankruptcy Code cured,

(b) having its maturity date reinstated, (c) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration, and (d) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

97.    *Rejection Damage Claims*: means Claims for damages, which shall be General Unsecured Claims, arising from the rejection of Executory Contracts pursuant to the Bankruptcy Code and applicable law.

98.    *Released Parties*: means each of: (a) the Debtors and Reorganized Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the Ad Hoc Committee; (e) the RSA Parties; (f) the Indenture Trustees; (g) the Prepetition First Lien Agent and Lenders; (h) the holders of Second Lien Notes; (i) the holders of Subordinated PIK Notes; (j) the holders of NGR Holding Equity Interests; (k) the Backstop Parties and (l) with respect to each of the foregoing Entities in clauses (a) through (k), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, Professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to each of the foregoing Entities in clauses (a) through (k), each solely in their capacity as such); *provided* *however*, that the Released Parties shall not include (x) any Person that receives and returns a Ballot or confirmation notice, as the case may be, indicating that such Person elects to opt out of the Plan releases provided for in Article VIII of the Plan, or (y) to the extent the Bankruptcy Court renders a judgment or determination that such opt-out mechanism is invalid, any Person to whom the opt-election was determined to be invalid and who fails to provide a written consensual release in favor of all the Released Parties that is identical in substance to the releases set forth herein.

99.    *Releasing Parties*: means each of: (a) the Debtors and Reorganized Debtors; (b) the DIP Agent; (c) the DIP Lenders; (d) the Ad Hoc Committee; (e) the RSA Parties; (f) the Indenture Trustees; (g) the Prepetition First Lien Agent and Lenders; (h) the holders of Second Lien Notes; (i) the holders of Subordinated PIK Notes; (j) the holders of NGR Holding Equity Interests; (k) the Backstop Parties; and (l) with respect to each of the foregoing Entities in clauses (a) through (k), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and each of their respective current and former shareholders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to each of the foregoing Entities in clauses (a) through (k), each solely in their capacity as such); *provided* *however*, that the Releasing Parties shall not include (x) any Person that receives and returns a Ballot or confirmation notice, as the case may be, indicating that such Person elects to opt out of the Plan releases provided for in Article VIII of the Plan, or (y) to the extent the Bankruptcy Court renders a judgment or determination that such opt-out mechanism is invalid, any Person to whom the opt-election was determined to be invalid and who fails to provide a written consensual release in favor of all the Released Parties that is identical in substance to the releases set forth herein.

100.    *Reorganized Debtors*: means, collectively, each of the Debtors, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date, as reorganized under and pursuant to the Plan.

101.    *Reorganized New Gulf*: means New Gulf Resources, LLC, on and after the Effective Date, as reorganized under and pursuant to the Plan, and which shall be owned, in whole or in part, by Reorganized NGR Holding and shall be treated as a partnership or disregarded entity for U.S. federal income tax purposes.

102.    *Reorganized NGR Holding*: means NGR Holding, on and after the Effective Date, as reorganized pursuant to and under the Plan, and which shall be a parent of the Reorganized Debtors and which shall be treated as a corporation for U.S. federal income tax purposes.

103.    *Reorganized NGR Holding LLC Agreement*: means the limited liability company agreement of Reorganized NGR Holding, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Requisite Supporting Noteholders in all respects, and the draft form of which shall be included in the Plan Supplement.

104.    *Reorganized NGR Holding Management Incentive Plan*: means that certain management incentive plan described in Article V.C hereof.

105.    *Requisite Supporting Noteholders*: has the meaning given in the Restructuring Support Agreement.

106.    *Restructuring Expenses*: means the fees and expenses incurred in connection with the Chapter 11 Cases, as well as the funding of obligations necessary to implement the Plan, including, but not limited to, any costs or reserves associated with the New First Lien Notes, the fees due and owing to the U.S. Trustee and the fees and expenses of Professionals and the Ad Hoc Committee.

107.    *Restructuring Support Agreement*: means the Restructuring Support Agreement, and all exhibits and schedules attached thereto, dated as of December 15, 2015, among the signatories thereto, as it may be amended, modified or supplemented by the parties thereto in accordance with the terms of such Restructuring Support Agreement, a copy of which Restructuring Support Agreement is attached to the Disclosure Statement as Exhibit [•], so long as such agreement is in full force and effect.

108.    *Restructuring Transactions*: means a description of the material terms of certain of the restructuring transactions to be implemented in connection with the Plan, as shall be set forth in the Plan Supplement and which shall be in form and substance satisfactory to the Requisite Supporting Noteholders.

109.    *Rights*: means the non-transferable, non-certificated rights distributed to Rights Offering Participants to purchase New First Lien Notes in connection with the Rights Offering, the Plan, the Backstop Agreement and the Rights Offering Procedures.

110. _Rights Offering_: means the offering of Rights to be conducted by New Gulf to Rights Offering Participants to purchase, on the Effective Date, New First Lien Notes in an aggregate principal amount up to the Rights Offering Amount, all in accordance with the terms of this Plan, the Backstop Agreement and the Rights Offering Procedures.

111. _Rights Offering Amount_: means $50,000,000.

112. _Rights Offering Participants_: means eligible holders of Second Lien Notes Claims as of the Rights Offering Record Date and that vote to accept the Plan and do not opt out of the Releases set forth in the Plan.

113. _Rights Offering Procedures_: means the procedures for conducting the Rights Offering, including the exhibits and annexes thereto, and all amendments, supplements, changes, and modifications thereto, all of which must be satisfactory to the Debtors and the Requisite Supporting Noteholders.

114. _Rights Offering Record Date_: means the record date established to determine the holders of Second Lien Notes Claims that are entitled to receive Rights and participate in the Rights Offering, such date to be set forth in, or determined pursuant to, the Rights Offering Procedures and acceptable to the Requisite Supporting Noteholders.

115. _Royalty and Critical Trade Motion_: means the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay or Honor Prepetition and Post-Petition (A) Obligations to Holders of Royalty Interests and Working Interests and (B) Lease Operating Expenses; and (II) Granting Related Relief, and which shall be in form and substance, and in amounts, satisfactory to the Requisite Supporting Noteholders.

116. _RSA Parties_: has the meaning given in the Restructuring Support Agreement.

117. _Schedule of Rejected Executory Contracts_: means the schedule of Executory Contracts to be rejected by the Debtors pursuant to the Plan in the form filed with the Bankruptcy Court as part of the Plan Supplement, which schedule shall be satisfactory in form and substance to the Requisite Supporting Noteholders (including with respect to any amendment, modification or supplement thereof).

118. _Schedules_: means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims against the Debtors and Equity Interests, filed with the Court by the Debtors, including any amendments or supplements thereto.

119. _Second Lien Notes_: means the 11.75% Senior Secured Notes due 2019 issued pursuant to the Second Lien Notes Indenture.

120. _Second Lien Notes Claims_: means any and all Claims evidenced by, derived from, based upon, relating to, or arising under the Second Lien Notes and the Second Lien Notes Indenture, including, without limitation, all accrued but unpaid principal, interest, premiums (including the Applicable Premium, as defined therein), fees, costs, expenses, indemnities and other charges thereunder.

121.    *Second Lien Notes Indenture*: means that certain Indenture dated May 9, 2014, between New Gulf Resources, LLC, as the Company, NGR Finance Corp., as the Co-Issuer, the guarantors, and the Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent, as amended, supplemented, or modified from time to time prior to the Petition Date, pursuant to which the Second Lien Notes were issued.

122.    *Second Lien Notes Indenture Trustee*: means the Bank of New York Mellon Trust Company, N.A., as trustee for the Second Lien Notes.

123.    *Second Lien Notes Secured Claims*: means any and all Second Lien Notes Claims that are Secured.

124.    *Section 510 Claims*: means any (A) any Claim subject to subordination pursuant to section 510(c) of the Bankruptcy Code, or (B) any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any securities of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim.

125.    *Secured*: means when referring to a Claim: (i) secured by a Lien on property in which any of the Estates has an interest, which Lien is valid, perfected, and enforceable as of the Confirmation Date pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and 1111(b) of the Bankruptcy Code or (ii) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

126.    *Securities Act*: means the Securities Act of 1933, as amended.

127.    *Solicitation Parties*: means each of the following in its capacity as such: (i) the Debtors and the Reorganized Debtors, (ii) the officers, directors, managers, and employees of the Debtors, (iii) the Professionals of the Debtors, and (iv) the RSA Parties, and (v) the Backstop Parties.

128.    *Solicitation Procedures*: means the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

129.    *Subordinated PIK Notes*: means the 10.0%/12.0% Senior Subordinated PIK Toggle Notes due 2019 issued pursuant to the Subordinated PIK Notes Indenture.

130.    *Subordinated PIK Notes Claims*: means the Claims evidenced by, derived from, based upon, relating to, or arising from, the Subordinated PIK Notes.

131. *Subordinated PIK Notes Indenture*: means that certain Indenture dated May 9, 2014 between New Gulf Resources, LLC, as the Company, NGR Finance Corp., as the Co-Issuer, the guarantors, and the Bank of New York Mellon Trust Company, N.A., as Trustee, pursuant to which the Subordinated PIK Notes were issued.

132. *Subordinated PIK Notes Indenture Trustee*: means the Bank of New York Mellon Trust Company, N.A., as trustee for the Subordinated PIK Notes.

133. *Transaction Expenses*: means the reasonable and documented fees and expenses of each member of the Ad Hoc Committee (including all Noteholder Fees and Expenses (as defined in the Restructuring Support Agreement)) and the Backstop Parties (including all Transaction Expenses (as defined in the Backstop Agreement)), including, without limitation, the fees and expenses of (i) Stroock & Stroock & Lavan LLP ("Stroock"), (ii) Richards, Layton & Finger, PA, (iii) Haynes and Boone, LLP, (iv) PJT Partners LP, (v) DeGolyer and MacNaughton Canada Limited, and (vi) such other engineers and/or consultants as may be retained by the Ad Hoc Committee with the consent of the Debtors, such consent not to be unreasonably withheld or delayed

134. *Unimpaired*: means any Class of Claims or Equity Interests that is not Impaired under the Plan.

135. *U.S. Trustee*: means the United States Trustee for the District of Delaware.

136. *Voting Deadline*: has the meaning given in the Disclosure Statement Order.

137. *Voting Record Date*: has the meaning given in the Disclosure Statement Order.

**B.    Interpretation, Application of Definitions, and Rules of Construction.**

Except as expressly provided herein, each capitalized term used in the Plan shall either have (i) the meaning ascribed to such term in Article I or (ii) if such term is not defined in Article I, but such term is defined in the Bankruptcy Code or Bankruptcy Rules, the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

C.      **Computation of Time.**

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, DIP LOAN CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, DIP Loan Claims, and Priority Tax Claims, each as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III.

A.      **Administrative Claims (Other Than Fee Claims).**

Each holder of an Administrative Claim, other than the holder of:

(i) a DIP Claim;

(ii) a Fee Claim;

(iii) an Administrative Claim that has been Allowed on or before the Effective Date;

(iv) an Administrative Claim of a governmental unit (as defined in section 101 (27) of the Bankruptcy Code) not required to be filed pursuant to section 503(b)(1)(D) of the Bankruptcy Code;

(v) an Administrative Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; or

(vi) an Administrative Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Claim is solely for outstanding wages, commissions, or reimbursement of business expenses;

must file with the Bankruptcy Court and serve on the Debtors or Reorganized Debtors (as the case may be), the Claims Agent, and the Office of the U.S. Trustee, proof of such Administrative Claim within thirty (30) calendar days after the Effective Date (the "<u>Administrative Bar Date</u>"). Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Claim and if the Administrative Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  For the avoidance of doubt, any deadline for filing Administrative Claims shall not apply to fees payable pursuant to section 1930

01:18082857.1

17

of title 28 of the United States Code.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED WITHOUT THE NEED FOR FURTHER ACTION, ORDER OR APPROVAL OF OR NOTICE TO THE BANKRUPTCY COURT.

Each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim or DIP Loan Claim) as of the Effective Date shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as reasonably practicable after either (a) the Effective Date, if such Administrative Claim is Allowed as of the Effective Date, (b) thirty days after the date such Administrative Claim becomes an Allowed Administrative Claim, if such Administrative Claim is Disputed as of, or following, the Effective Date, or (c) the date such Allowed Administrative Claim becomes due and payable in the ordinary course of business in accordance with the terms, and subject to the conditions, of any agreements governing, instruments evidencing, or other documents relating to, the applicable transaction giving rise to such Allowed Administrative Claim, if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business; or (ii) such other treatment as the Debtors or the Reorganized Debtors, the Requisite Supporting Noteholders and such holder shall have agreed in writing.

All Transaction Expenses shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court or a formal request for payment prior to the Claims Bar Date, and without any requirement for Bankruptcy Court review or approval.

## B.    DIP Loan Claims.

1.    *Allowance*.  All DIP Loan Claims are Allowed Claims in the full amount due and owing under the DIP Credit Agreement.

2.    *DIP Exchange Notes*.  On the Effective Date, subject to the satisfaction or waiver of all conditions precedent to effectiveness herein, (i) the DIP Lenders will surrender all claims for payment of principal of the DIP Loans as of the Effective Date in exchange for New First Lien Notes in an aggregate principal amount equal to the aggregate principal amount of the DIP Loans as of the Effective Date, in full satisfaction of the principal portion of the DIP Loan Claims (ii) the balance of the DIP Loan Claims, including accrued unpaid interest and any other amounts due under the DIP Credit Agreement, will be satisfied in cash, and (iii) in consideration for the Debtors' right to require the DIP Lenders to surrender all claims for payment of the principal portion of the DIP Loans in exchange for DIP Exchange Notes as set forth above, the DIP Lenders will receive their respective *pro rata* shares of an additional amount of New First Lien Notes in an aggregate principal amount equal to $5,250,000.

3.    *Lien Termination*.  Upon the issuance of DIP Exchange Notes in exchange for the principal portion of the Allowed DIP Loan Claims and payment of the balance of the DIP Loan Claims in cash as provided herein, all Liens and security interests granted pursuant to the

DIP Loan Documents, whether in the Chapter 11 Cases or otherwise, shall be deemed automatically terminated without any further action required and shall be of no further force or effect.

4.     *DIP Lenders' Professional Fees*.  To the extent not previously paid, on the Effective Date, the Debtors will pay all of the fees and expenses incurred by the DIP Agent and the DIP Lenders, including the fees and expenses of (a) Stroock, (b) Richards, Layton & Finger, PA, (c) PJT Partners LP, (d) DeGolyer and MacNaughton Canada Limited, (e) Haynes and Boone, LLP, and (f) such other engineers and/or consultants retained by the DIP Lenders with the consent of the Debtors, such consent not to be unreasonably withheld, delayed or conditioned.

## C.     **Fee Claims.**

1.     *Final Fee Applications*.  The Bankruptcy Court shall determine the Allowed amounts of Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Fee Claims in Cash in the amount Allowed by Final Order of the Bankruptcy Court.  All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the U.S. Trustee, counsel to the Ad Hoc Committee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, no later than sixty (60) calendar days after the Effective Date, unless otherwise agreed by the Debtors with the consent of the Requisite Supporting Noteholders.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors, or their respective properties and affiliates, and such Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, counsel to the Ad Hoc Committee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

2.     *Post-Effective Date Fees and Expenses*.  The Reorganized Debtors shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors' Professionals on and after the Effective Date, in the ordinary course of business, and without any further notice to or action, order, or approval of the Court.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed by the Reorganized Debtors and paid in the ordinary course of business without any further notice to, or action, order, or approval of, the Court.

## D.     **Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, as determined by the applicable Debtor (with the consent of the Requisite Supporting Noteholders), in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim (i) payment in full in Cash, payable in

equal Cash installments made on a quarterly basis in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (ii) such other treatment as may be agreed upon by such holder, the Debtors and the Requisite Supporting Noteholders or otherwise determined upon a Final Order of the Court.

**E.**      **U.S. Trustee Fees.**

         Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Effective Date, the Reorganized Debtors shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee for the Reorganized Debtors until the entry of a final decree in the Chapter 11 Cases or until the Chapter 11 Cases are converted or dismissed.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLAIMS AND EQUITY INTERESTS**

**A.**      **Classification of Claims and Equity Interests.**

         Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below.  A Claim or Equity Interest is placed in a particular Class solely to the extent that the Claim or Equity Interest falls within the description of that Class, and the portion of a Claim or Equity Interest which does not fall within such description shall be classified in another Class or Classes to the extent that such portion falls within the description of such other Class or Classes.  A Claim is also placed in a particular Class for the purpose of voting, confirmation, and receiving distributions pursuant to the Plan solely to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

         All Claims against and Equity Interests in a particular Debtor are placed in classes for each of the Debtors (as designated by subclasses a through d for each of the four Debtors).  Specifically, such subclasses represent Claims against and Equity Interests in the Debtors as follows: NGR Holding Company LLC (subclass a), New Gulf Resources, LLC (subclass b); NGR Finance Corp. (subclass c), and NGR Texas (subclass d).

**B.**      **Distribution Record Date.**

         As of the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims against the Debtors or Equity Interests.  The Reorganized Debtors shall have no obligation to, but may, with the consent of the Requisite Supporting Noteholders, recognize any transfer of any Claims against the Debtors occurring after the Distribution Record Date.  The Reorganized Debtors shall

instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Distribution Record Date.

## C. Summary of Classification and Class Identification.

Below is a chart identifying Classes of Claims against and Equity Interests in each Debtor, a description of whether each Class is Impaired or Unimpaired, and each Class's voting rights with respect to the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired / Unimpaired[2] | Deemed to Accept / Entitled to Vote |
| 5 | Subordinated PIK Note Claims | Impaired | Entitled to Vote |
| 6 | Section 510 Claims | Impaired | Deemed to Reject |
| 7 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 9 | NGR Holding Equity Interests | Impaired | Deemed to Reject |

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied, for the purposes of Confirmation, by acceptance of the Plan by an Impaired Class of Claims against each such Debtor; provided, however, that in the event no holder of a Claim with respect to a specific voting Class timely submits a Ballot indicating acceptance or rejection of the Plan, such Class will be deemed to have accepted the Plan. The Debtors hereby request that the Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.

## D. Treatment of Classified Claims and Equity Interests.

1. *Class 1 - Other Priority Claims (Subclasses 1a-1d).*

*(a)* *Classification*: Class 1 consists of Other Priority Claims.

*(b)* *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim and the Debtors (with the consent of the Requisite Supporting Noteholders) agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive (i) payment in Cash in an amount equal to such Allowed Other Priority Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty days

---

[2]   At or prior to the hearing on the Disclosure Statement, the treatment of Class 4 will vary depending on the election set forth in more detail in Article III.D.4.

after the date when such Other Priority Claim becomes an Allowed Other Priority Claim or (ii) such other treatment, as determined by the Debtors (with the prior written consent of the Requisite Supporting Noteholders), that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    *Class 2 - Other Secured Claims (Subclasses 2a-2d)*.

(a)    *Classification*: Class 2 consists of Other Secured Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim and the Debtors (with the prior written consent of the Requisite Supporting Noteholders) agree in writing to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for such Other Secured Claim, each holder of an Allowed Other Secured Claim shall, as determined by the Debtors (with the prior written consent of the Requisite Supporting Noteholders), receive (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) and/or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, (ii) the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) such other treatment, as determined by the Debtors (with the prior written consent of the Requisite Supporting Noteholders) that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.    *Class 3 - Second Lien Notes Claims (Subclasses 3a-3d)*.

(a)    *Classification*: Class 3 consists of Second Lien Notes Claims.

(b)    *Allowance*: The Second Lien Notes Claims shall be deemed Allowed in the aggregate principal amount of at least approximately $365 million, *plus* the Applicable Premium (as referred to in the Second Lien Note Indenture) in the amount of not less than $63 million, *plus* accrued but unpaid interest, *plus* any other amounts due under the Second Lien Notes Indenture, including, without limitation, all unpaid principal, interest (including at the default rate), premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising,

accrued, accruing, due, owing or chargeable in respect thereof, including all "Guaranteed Obligations" as defined in the Second Lien Note Indenture.

(c)    *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Second Lien Notes Claim, each holder of an Allowed Second Lien Notes Claim will be entitled to receive its Pro Rata share of:

(i)    on the Effective Date, 87.5% of the New Equity Interests that are issued and outstanding as of the Effective Date (subject to dilution by the Dilution Events);

(ii)    the Rights, subject to and in accordance with the Rights Offering Procedures; and

(iii)    on the Effective Date, if and only if the class of Subordinated PIK Notes Claims does not vote to accept the Plan, an additional 7.5% of the New Equity Interests (subject to dilution by the Dilution Events).

(d)    *Voting*: Class 3 is Impaired.  Holders of Class 3 Second Lien Notes Claims are entitled to vote to accept or reject the Plan.

4.    *Class 4 - General Unsecured Claims (Subclasses 4a-4d).*

(a)    *Classification*: Class 4 consists of General Unsecured Claims.

(b)    *Treatment*: At or prior to the hearing on the Disclosure Statement, the Debtors and the Requisite Supporting Noteholders shall determine whether holders of General Unsecured Claims in Class 4 shall receive the treatment provided for in subsection (i) or (ii) of this paragraph below.

(i)    In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, on the Effective Date, each holder of an Allowed General Unsecured Claim shall, and only to the extent such holder's Allowed General Unsecured Claim was not previously paid, have its Allowed General Unsecured Claim Reinstated as an obligation of the applicable Reorganized Debtor, and be paid in accordance with its ordinary course terms.

(ii)    In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, as soon as practicable after the later of (a) the Effective Date, and (b) thirty days after the date such General Unsecured Claim becomes an Allowed Claim each holder of an Allowed General Unsecured Claim shall, and only to the extent such holder's Allowed General Unsecured Claim was not previously paid, receive its Pro Rata share of the General

Unsecured Creditor Recovery Fund; *provided, however*, that in no event shall such distribution be in excess of 100% of the amount of such holder's Allowed General Unsecured Claim.

(c)     *Voting*: To the extent Class 4 receives treatment pursuant to subsection 4(b)(i) above, Class 4 is Unimpaired, and holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.  To the extent Class 4 receives treatment pursuant to subsection 4(b)(ii) above, Class 4 is Impaired, and holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan

5.     *Class 5 - Subordinated PIK Notes Claims (Subclasses 5a-5d)*.

(a)     *Classification*: Class 5 consists of Subordinated PIK Notes Claims.

(b)     *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Subordinated PIK Notes Claim, on the Effective Date, each holder of an Allowed Subordinated PIK Notes Claim will be entitled to receive:

(i)     if Class 5 votes to accept the Plan, its Pro Rata share of 12.5% of the New Equity Interests that are issued and outstanding as of the Effective Date (subject to dilution by the Dilution Events); or

(ii)     if Class 5 does not vote to accept the Plan, its Pro Rata share of 5% of the New Equity Interests that are issued and outstanding as of the Effective Date (subject to dilution by the Dilution Events).

(c)     *Voting*: Class 5 is Impaired.  Holders of Class 5 Subordinated PIK Notes Claims are entitled to vote to accept or reject the Plan.

6.     *Class 6 - Section 510 Claims (Subclasses 6a-6d)*.

(a)     *Classification*: Class 6 consists of Section 510 Claims.

(b)     *Treatment*: On the Effective Date, all Section 510 Claims shall be cancelled and discharged and shall be of no further force or effect, and holders of Section 510 Claims shall not receive or retain any property under the Plan on account of such Claims.

(c)     *Voting*: Class 6 is Impaired.  Holders of Class 6 Section 510 Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 6 Section 510 Claims are not entitled to vote to accept or reject the Plan.

7.     *Class 7 - Intercompany Claims (Subclass 7a-7d)*

(a)     *Classification*: Class 7 consists of Intercompany Claims.

01:18082857.1

(b)     *Treatment*: In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Intercompany Claim, on the Effective Date, each Intercompany Claim shall be Reinstated.  Subject to the Restructuring Transactions, on and after the Effective Date, the Reorganized Debtors will be permitted to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

(c)     *Voting*: Class 7 is Unimpaired.  Holders of Class 7 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan

8.      *Class 8 - Intercompany Interests (Subclasses 8a-8d)*.

(a)     *Classification*: Class 8 consists of Intercompany Interests.

(b)     *Treatment*: On the Effective Date, subject to the Restructuring Transactions, the Intercompany Interests shall be Reinstated.

(c)     *Voting*: Class 8 is Unimpaired.  Holders of Class 8 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 8 Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.      *Class 9 - Prepetition Equity Interests (Subclasses 9a-9d)*.

(a)     *Classification*: Class 9 consists of NGR Holding Equity Interests.

(b)     *Treatment*: On the Effective Date, NGR Holding Equity Interests shall be cancelled and discharged and shall be of no further force or effect, whether surrendered for cancellation or otherwise, and holders of NGR Holding Equity Interests shall not receive or retain any property under the Plan on account of such NGR Holding Equity Interests.

(c)     *Voting*: Class 9 is Impaired.  Holders of Class 9 NGR Holding Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 9 NGR Holding Equity Interests are not entitled to vote to accept or reject the Plan.

**E.      Special Provision Regarding Unimpaired and Reinstated Claims.**

Nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims.  Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Effective Date against, or with respect to, any Claim left Unimpaired or Reinstated by this Plan.  Except as otherwise specifically provided in

this Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert, all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Effective Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim left Unimpaired by this Plan may be asserted by the Reorganized Debtors after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

F.      **Voting of Claims.**

        Each holder of an Allowed Claim in an Impaired Class of Claims that is not deemed to have rejected the Plan, and that held such Claim as of the Voting Record Date, shall be entitled to vote to accept or reject the Plan.  The instructions for completion of the Ballots are set forth in the instructions accompanying each Ballot.  The Solicitation Procedures are described in the Disclosure Statement.

G.      **Nonconsensual Confirmation.**

        The Debtors intend to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

H.      **Elimination of Vacant Classes**

        Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      **Operations Between the Confirmation Date and Effective Date**

        During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate their businesses as debtors in possession, subject to all applicable orders of the Bankruptcy Court, the Bankruptcy Code, and any limitations set forth herein or in the Confirmation Order, the Restructuring Support Agreement, and the Backstop Agreement.

B.      **Issuance of New Equity Interests.**

        On the Effective Date, the applicable Reorganized Debtors are authorized to issue or cause to be issued the New Equity Interests in accordance with the terms of this Plan and the Organizational Documents, without the need for any further corporate or shareholder action.  All of the New Equity Interests, issuable under the Plan, and all New Common Units (as defined in the Backstop Agreement issuable upon conversion of the New First Lien Notes that are issued

under the Plan or pursuant to the Backstop Agreement, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable, and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law.

Upon the Effective Date, (i) the New Equity Interests shall not be registered under the Securities Act, and shall not be listed for public trading on any securities exchange, and (ii) none of the Reorganized Debtors will be a reporting company under the Exchange Act. The distribution of New Equity Interests pursuant to the Plan may be made by delivery of one or more certificates representing such New Equity Interests as described herein, by means of book-entry registration on the books of the transfer agent for shares of New Equity Interests or by means of book-entry exchange through the facilities of a transfer agent satisfactory to the Debtors and the Requisite Supporting Noteholders in accordance with the customary practices of such agent, as and to the extent practicable.

## C.   <u>New First Lien Notes.</u>

On the Effective Date, the applicable Reorganized Debtors are authorized, without the need for any further corporate or limited liability company action, to enter into the New First Lien Notes Indenture, the other New First Lien Notes Documents and any ancillary documents necessary or appropriate to satisfy the conditions to effectiveness of the Plan and/or the Backstop Agreement that relate to the New First Lien Notes, and to issue the New First Lien Notes. The proceeds of the New First Lien Notes shall be used to pay the Restructuring Expenses and provide the Reorganized Debtors with working capital for their post-Effective Date operations and for other general corporate purposes. The indebtedness, liabilities and other obligations under the New First Lien Notes Documents shall be secured by first priority security interests in and Liens on all of the assets of the Reorganized Debtors, as set forth in and subject to the New First Lien Notes Documents.

In consideration for the Debtors' right to require the DIP Lenders to surrender all claims for payment of principal of the DIP Loans in exchange for DIP Exchange Notes as set forth above, the DIP Lenders will receive, on the Effective Date, their respective pro rata shares of an additional amount of New First Lien Notes in an aggregate principal amount equal to $5,250,000. The balance of the DIP Loan Claims, including accrued unpaid interest and any other amounts due under the DIP Credit Agreement, will be paid in cash. The remaining balance of the New First Lien Notes will be issued on the Effective Date in accordance with the Rights Offering, pursuant to the Backstop Agreement and the Plan.

## D.   <u>Rights Offering.</u>

Prior to the Effective Date, the Debtors shall conduct the Rights Offering in accordance with the Backstop Agreement Order and the Rights Offering Procedures. Rights Offering Participants shall have the right, subject to the terms of the Rights Offering Procedures and the Plan, to exercise Rights to purchase up to their Pro Rata share of $50 million of original principal amount of New First Lien Notes. Subject to the terms and conditions of the Backstop Agreement, the Backstop Parties shall backstop the full amount of the New First Lien Notes offered for sale in the Rights Offering (not to exceed the Rights Offering Amount) through the commitment to exercise the Rights issued to them in their capacity as Rights Offering

Participants and purchase all of the New First Lien Notes that are not subscribed for by other Rights Offering Participants in the Rights Offering.

In consideration for the right of New Gulf to call the commitments of the Backstop Parties under the Backstop Agreement to purchase all of the Unsubscribed Notes (as defined in the Backstop Agreement) in accordance with and subject to the terms of the Backstop Agreement, the Debtors shall be required to issue to the Backstop Parties (or their designees) an additional amount of New First Lien Notes in an aggregate principal amount equal to $5,000,000 (the "Put Option Notes"), as described in and subject to the terms and conditions set forth in the Bankruptcy Agreement.

**E.    Exemption from Registration.**  To the extent securities were offered prior to the filing of the Plan, such securities were offered in reliance on the exemption provided by Section 4(a)(2) of the Securities Act.  The offer, issuance, sale and distribution under the Plan of the (a) New Equity Interests, (b) Rights, (c) New First Lien Notes issued in the Rights Offering to Rights Offering Participants (d) New First Lien Notes issued in the DIP Exchange and (e) the issuance of New Equity Interests in connection with any conversion of the New First Lien Notes issued in the Rights Offering or the DIP Exchange, shall all be exempt from registration under Section 5 of the Securities Act and any other applicable securities laws under, and to the extent provided by, Section 1145 of the Bankruptcy Code. The issuance and distribution of the Backstop Commitment Notes and the Put Option Notes, as well as any New Equity Interests into which such notes are converted, will be exempt from registration under the Securities Act and any other applicable securities laws under Section 4(a)(2) of the Securities Act and/or section 1145 of the Bankruptcy Code.    **Cancellation of Certain Indebtedness, Agreements, and Existing Securities.**

On the Effective Date, except for the purposes of evidencing a right to a distribution under this Plan, and except as otherwise specifically provided for in the Plan, (i) the Restructuring Support Agreement, the Prepetition First Lien Credit Agreement, the Second Lien Note Indenture and the Notes Documents (as defined in the Second Lien Notes Indenture), the Subordinated PIK Notes Indenture and the Note Documents (as defined in the Subordinated PIK Notes Indenture), and any other certificate, note, bond, indenture, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of any of the Debtors giving rise to any Claim (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of any Debtors that are specifically Reinstated pursuant to the Plan), (ii) all Equity Interests of the Debtors (excluding Intercompany Interests) and any certificate or other instrument or document directly or indirectly evidencing or creating any Equity Interest in any of the Debtors as of immediately prior to the Effective Date, (iii) all registration rights, preemptive rights, rights of first refusal, rights of first offer, co-sale rights and other investor rights governing or relating to any of the indebtedness, obligations, Equity Interests or other items described in any of clauses (i) or (ii) above, and (iv) all obligations and liabilities arising under, related to, or in connection with, any of the items described in any of clauses (i)-(iii) above, in any such case, shall be deemed automatically extinguished, cancelled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder or with respect thereto; and the obligations of any of the Debtors and the Reorganized Debtors pursuant, relating, or pertaining to any agreements,

indentures, purchase agreements, certificates of incorporation, certificates of formation, by-laws, limited liability company agreements or similar documents governing or evidencing any of the items described in clauses (i)-(iv) above shall be released and discharged; and the holders of or parties to, or beneficiaries of, any of the items described in clauses (i) – (iv) above, will have no rights arising from or relating to, and will not be entitled to the benefits of, any such items or the cancellation thereof, except the rights expressly provided for pursuant to this Plan; _provided_, _however_, that, notwithstanding the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders of such Claims to receive distributions under the Plan as provided herein; _provided_, _however_, that the subordination provisions contained in the Subordinated PIK Notes Indenture shall remain in full force and effect (except to the extent necessary to enable the holders of Subordinated PIK Notes to receive and retain the distributions set forth in Article IIID.5 hereof, it being understood that all rights and remedies of the Second Lien Notes Indenture Trustee and the holders of Second Lien Notes with respect to subordination are otherwise expressly preserved).  For the avoidance of doubt, nothing in this section shall affect the discharge of or result in any obligation, liability, or expense of the Debtors or the Reorganized Debtors, or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any additional obligation, expense, or liability of the Debtors or the Reorganized Debtors.

Upon the payment or other satisfaction of an Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors (as applicable) any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or _lis pendens_.

## G.      Intercompany Interests.

Subject to the Restructuring Transactions, the Intercompany Interests shall be retained shall continue in place, solely for the purpose of maintaining the existing corporate structure of the Debtors and the Reorganized Debtors.

## H.      Continued Corporate Existence and Vesting of Assets.

Except as otherwise provided herein, each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to such Reorganized Debtors' Organizational documents and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law.  On or after the Effective Date, each Reorganized Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law and such Reorganized Debtor's Organizational Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its Subsidiary and/or affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor

to be changed; or (iv) the closure of a Reorganized Debtor's case on the Effective Date or any time thereafter.

Except as otherwise provided herein, on the Effective Date, all property of each Debtor's Estate, including any property held or acquired by each Debtor or Reorganized Debtor under the Plan or otherwise, will vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests, and other interests, except for the Liens and Claims established under the Plan; *provided that* nothing in this Article IV.G shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Deadline unless otherwise ordered by the Bankruptcy Court; *provided, further, however,* that the Debtors and the Reorganized Debtors waive and release any Causes of Action against any of the Released Parties as provided for in Article VII.E. hereof.

On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, and dispose of property and maintain, prosecute, abandon, compromise, settle or otherwise dispose any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur from and after the Effective Date for Fee Claims, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Court.

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Transactions, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree, including, without limitation, the New First Lien Notes and the New First Lien Note Documents; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

I.      **Retention of Avoidance Actions.**

As of the Effective Date, all Avoidance Actions shall revest exclusively in the Reorganized Debtors; *provided*, *however*, that the Debtors and the Reorganized Debtors waive and release any Causes of Action against any of the Released Parties as provided for in Article VII.E. hereof.

**J.**    **Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided in Article VII.E. herein, the Reorganized Debtors shall retain all Causes of Action, if any, described in the Plan Supplement.   Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense of any Debtor that is not specifically waived or relinquished by this Plan.   The Reorganized Debtors shall have, retain, reserve, and be entitled to assert, all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that any Debtor had immediately before the Effective Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against such Person.   The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, subject to the terms of the Plan.   From and after the Effective Date, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. The Reorganized Debtors are deemed representatives of the Estates for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

**K.**    **Claims Incurred After the Effective Date.**

Claims incurred by the Debtors after the Effective Date may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with such holders of a Claim and applicable law.

**L.**    **Corporate Action.**

Each of the matters provided for by the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any action under the Plan to be taken by or required of the Debtors of the Reorganized Debtors, whether taken prior to or as of the Effective Date, including, without limitation, (a) the adoption and filing of the Organizational Documents for each of the other Reorganized Debtors; (b) the authorization, issuance, and distribution of New Equity Interests and any other securities and instruments; (c) the adoption, assumption or assignment, as applicable, of Executory Contracts; (d) implementation of the Reorganized NGR Holding Management Incentive Plan; (e) the selection of officers or directors/managers, and (f) the issuance of the New First Lien Notes, the entry into the New First Lien Notes Indenture and the execution and delivery of the New First Lien Notes Documents, and implementation of the Restructuring Transactions shall each be authorized and approved in all respects, without any requirement of further action by any of the

Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

The Debtors, the Reorganized Debtors, and the Disbursing Agent, as applicable, shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, corporate, board or security holder approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or stockholders of the applicable Debtor or Reorganized Debtor.

## ARTICLE V.
## PROVISIONS REGARDING CORPORATE GOVERNANCE
## OF THE REORGANIZED DEBTOR

### A.    Organizational Documents.

On the Effective Date, the Organizational Documents of each of the Reorganized Debtors shall be deemed authorized in all respects. To the extent applicable, the Organizational Documents for the Reorganized Debtors shall prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code (and any material changes in the form or the classification of Reorganized NGR Holding and/or Reorganized New Gulf shall be addressed in the Plan Supplement).

### B.    Appointment of Officers and Directors.

As of the Effective Date, the term of the current members of the board of directors or managers of NGR Holding shall be deemed to have expired and such members shall be deemed removed from such board, without further action by or notice to any Person. On the Effective Date, the initial directors or managers of the New Board shall consist of seven (7) directors/managers, including the Chief Executive Officer of Reorganized NGR Holding, three (3) directors/managers designated by Värde Partners, Inc., one (1) director/manager designated by Millstreet Capital Management LLC, one (1) director/manager designated by PennantPark Investment Corporation, and one (1) independent director/manager satisfactory to the Ad Hoc Committee. Commencing on the Effective Date, each of the directors of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

The Plan Supplement shall identify the members of the boards of directors of the New Board, as applicable, of the Reorganized Debtors.

On the Effective Date, the executive officers of Reorganized NGR Holding shall be those executive officers that were employed by NGR Holding immediately prior to the

occurrence of the Effective Date, subject to the execution of amended and restated employment contracts (to the extent applicable) that are acceptable to such employee and the New Board.

**C.**     **Reorganized NGR Holding Management Incentive Plan.**

A new management incentive program (the "MIP") shall be implemented immediately following the Effective Date.  The MIP will provide for equity and/or equity-based awards, subject to the terms and conditions provided in the MIP and any individual award agreements.  The pool available for grants of awards under the MIP will be equal to 9% in the aggregate of the new equity interests (on a fully diluted basis and not subject to dilution as of any Dilution Events) as of the Effective Date.  The New Board (in consultation with the CEO) of Reorganized NGR Holding shall grant one half of the MIP pool (4.5% of the new equity interests) to the Executive Team (as defined below) on or as soon as administratively practicable after the Effective Date, and such awards shall vest one-third at grant and one-third on each of the first and second anniversaries of such grant, subject to such terms and conditions as provided under the MIP and individual award agreements.  25% of the MIP pool (2.25% of the new equity interests) will be available for grants to certain non-executive employees following emergence pursuant to and subject to guidelines established by the New Board in consultation with the CEO and shall contain such vesting provisions and other terms and conditions as determined by the New Board, in consultation with the CEO.  The remaining portion of the MIP pool (i.e., 2.25% of the new equity interests) shall be available for awards, as determined by the New Board in its discretion after the Effective Date to the Executive Team and shall vest based on such terms and conditions determined by the New Board at the time of grant.  For purposes of the MIP, "Executive Team" shall refer to Chairman and CEO; SVP & Chief Financial Officer; SVP Geology & Geophysics; SVP Drilling & Completions; SVP Production Operations Engineering; and VP Strategic Planning & Development.  In addition, the MIP shall provide that awards shall provide that awards shall allow for net settlement to satisfy any required tax withholding not to exceed the statutory minimum and shall vest on a change in control that occurs while a grantee is employed by the Company.  The material terms and conditions of the MIP will be included in the Plan Supplement.

**D.**     **Indemnification of Directors, Officers, and Employees.**

From and after the Effective Date, indemnification obligations owed by NGR Holding to directors, managers, officers, or employees of the Debtors who served or were employed by any Debtor on or after May 1, 2014, to the extent provided in the articles or certificate of formation or limited liability company agreement of NGR Holding in effect as of immediately prior to the Petition Date, will be deemed assumed pursuant to the Plan and shall survive Confirmation of the Plan, and, for the avoidance of doubt, the Reorganized Debtors shall indemnify all such directors, managers, officers or employees for any claims or liabilities resulting from Covered Actions arising from NGR Holding's limited liability company agreement, except for fraud, gross negligence or willful misconduct, each as determined by a final non-appealable order.  The Reorganized Debtors shall obtain a directors and officers tail policy providing for such continuing coverage for a period of seven years following the Effective Date on substantially the same terms as existed as of the Petition Date.

01:18082857.1

33

## ARTICLE VI.
## CONFIRMATION OF THE PLAN

### A.    Conditions to Confirmation.

The following are conditions to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived in accordance with Article VI.B:

1.    The Court shall have approved the Disclosure Statement, which shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Requisite Supporting Noteholders.

2.    The Confirmation Order shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Requisite Supporting Noteholders.

3.    The Plan shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Requisite Supporting Noteholders, it being understood that the draft Plan dated December 17, 2015 is satisfactory to the Requisite Supporting Noteholders.

4.    The Plan Supplement shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Requisite Supporting Noteholders.

5.    The Restructuring Support Agreement shall not have been terminated in accordance with the terms thereof, and the Restructuring Support Agreement shall be in full force and effect.

6.    The Backstop Agreement shall not have been terminated in accordance with the terms thereof, and the Backstop Agreement shall be in full force and effect.

7.    The DIP Order and the DIP Agreement shall be in full force and effect in accordance with their terms and no Termination Event (as defined in the DIP Order) or Event of Default (as defined in the DIP Agreement) shall have occurred or be continuing; and

8.    The Schedule of Rejected Executory Contracts is in form and substance satisfactory to the Debtors and the Requisite Supporting Noteholders.

### B.    Waiver of Conditions Precedent to Confirmation.

The Debtors, with the prior written consent of the Requisite Supporting Noteholders, may waive the conditions set forth in Article VI.A above at any time without leave or order of the Court and without any formal action.

C.      **Binding Effect**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

D.      **Vesting of Assets.**

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan, the property of each Estate shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other Interests, except as provided herein or in the Confirmation Order.  The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

## ARTICLE VII.
## SETTLEMENT,  RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      **General Settlement of Claims and Interests.**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim, subject in each case to Article IV.E. hereof.

Without limiting the foregoing, the provisions of the Plan shall, upon consummation, constitute a good faith compromise and settlement, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, among the Debtors and the Ad Hoc Committee of all disputes among the parties, including those arising from, or related to the Second Lien Notes Claims.  In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors and the Ad Hoc Committee reserve all of their respective rights with respect to any and all disputes that would have been resolved and settled under the Plan had the Effective Date occurred.

The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.  The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and/or the Confirmation Order, including,

01:18082857.1

without limitation, the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and/or the Confirmation Order.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

## B.    Subordination of Claims

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, subject in each case to Article IV.E. hereof.  However, the Debtors (with the consent of the Requisite Supporting Noteholders) reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim.

## C.    Discharge of the Debtors.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created or assumed pursuant to the Plan: (a) the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtors, the Reorganized Debtors or any of their assets, properties or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests and Causes of Action, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability, whether on account of representations or warranties issued or otherwise, whether on or before the Effective Date; (b) the Plan shall bind all holders of Claims and Equity Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be deemed to be satisfied, discharged and released in full, and the Debtors' liability with respect thereto, shall be extinguished completely, including debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder; and (d)  all holders of such Claims and Equity Interests shall be precluded from ever asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors, assigns and affiliates, and their assets and properties any Claims and Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.**

01:18082857.1

Upon the Effective Date, all Claims and Causes of Action against any Debtor related to or arising from any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to a non-Debtor affiliate and/or subsidiary of the Debtors, shall receive the classification and treatment provided for such Claims in the Plan and shall be discharged and all holders thereof forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim and Cause of Action against any Reorganized Debtor.

D.      **Release of Liens.**

Except (a) with respect to the Liens securing the indebtedness, obligations, and liabilities under the New First Lien Notes Documents, and (b) as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtors' Estates (including all liens provided for in the DIP Order on account of the DIP Loan Claims) shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reorganized Debtors and each of their successors and assigns.

E.      **Releases by the Debtors.**

For good and valuable consideration (including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Restructuring Support Agreement and the Plan and the compromises contained herein), the adequacy of which is hereby confirmed, and except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors, the Reorganized Debtors and the Debtors' Estates, including any successor to the Debtors or any Estate representative, shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities that could have been asserted by or on behalf of the Debtors or their Estates or Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity, against the Released Parties (and each such Released Party shall be deemed forever released, waived and discharged by the Debtors and Reorganized Debtors), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating the Covered Actions, provided, however, that the foregoing shall not operate to waive or release (i) any Causes of Action, if any, expressly set forth in and preserved by the Plan or the Plan Supplement (with the consent of the Requisite Supporting Noteholders); (ii) any Causes of Action arising from fraud, gross negligence, or willful misconduct as determined by final non-appealable order; and/or (iii) the rights of the Debtors or the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan

or assumed pursuant to the Plan or assumed pursuant to final non-appealable order. The foregoing release shall be effective as of and subject to the occurrence of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person and the Confirmation Order will permanently enjoin the commencement, prosecution or continuation by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this release.

F.    **Releases by Certain Holders of Claims and Equity Interests.**

For good and valuable consideration (including the service of the Released Parties to facilitate the reorganization of the Debtors, the implementation of the restructuring contemplated by the Restructuring Support Agreement and the Plan and the compromises contained herein), the adequacy of which is hereby confirmed, and except as otherwise specifically provided in the Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, each of the Releasing Parties shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities that could have been asserted by or on behalf of the Debtors or their Estates or Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity, against the other Released Parties (and each such other Released Party shall be deemed forever released, waived and discharged by the other Released Parties), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Covered Actions; provided, however, that the foregoing shall not operate to waive or release (i) any Causes of Action, if any, expressly set forth in and preserved by the Plan or the Plan Supplement (with the consent of the Requisite Supporting Noteholders); (ii) any Causes of Action arising from fraud, gross negligence, or willful misconduct as determined by final non-appealable order; and/or (iii) the rights of the Debtors or the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to final non-appealable order. The foregoing release shall be effective as of and subject to the occurrence of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person and the Confirmation Order will permanently enjoin the commencement, prosecution or continuation by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this release. Each Person providing releases under the Plan, including the Debtors, the Reorganized Debtors, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in those sections notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and

such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

G.    **Exculpation.**

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur any liability to any holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of or related to any act taken or omitted to be taken in connection with any Covered Action; **provided that** nothing in the foregoing "**Exculpation**" shall exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; **provided that** each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Notwithstanding anything herein to the contrary, as of the Effective Date, pursuant to section 1125(e) of the Bankruptcy Code, the Solicitation Parties upon appropriate findings of the Bankruptcy Court will be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan of a Reorganized Debtor, and shall not be liable to any Person on account of such solicitation or participation.

In addition to the protections afforded in this Article VII to the Exculpated Parties and the Solicitation Parties, and not in any way reducing or limiting the application of such protections, the Bankruptcy Court shall have exclusive jurisdiction over any and all Causes of Action asserted against any Debtor or Solicitation Party for Covered Actions that are not otherwise exculpated, released or enjoined by this Plan.

H.    **Injunction.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, AS OF THE CONFIRMATION DATE, BUT SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS ARE PERMANENTLY ENJOINED, FROM AND AFTER THE CONFIRMATION DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, THE EXCULPATION PARTIES OR THE SOLICITATION PARTIES OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFER OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING

PERSONS OR ENTITIES:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, LEVYING, COLLECTING, OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR AGAINST THE PROPERTY OR ESTATES OF SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY OF THE DEBTORS OR REORGANIZED DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF ANY OF THE DEBTORS OR REORGANIZED DEBTORS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED, SETTLED, OR DISCHARGED PURSUANT TO THE PLAN OR CONFIRMATION ORDER, (6) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THIS PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW; AND (7) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS, OR OBTAINING BENEFITS, PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN.

By accepting Distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the Injunctions set forth in this Section.

## I.      Injunction Against Interference with Plan.

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

## J.      Limitations on Exculpations and Releases.

**Notwithstanding anything contained herein to the contrary, the releases and exculpation contained herein do not release any obligations of any party arising under this**

Plan or any document, instrument or agreement (including those set forth in the New First Lien Notes Documents and the Plan Supplement) executed to implement the Plan.

**K.      Preservation of Insurance.**

The Debtors' discharge, exculpation and release, and the release in favor of the Released Parties, as provided herein, shall not, except as necessary to be consistent with this Plan, diminish or impair the enforceability of any insurance policy that may provide coverage for claims against the Debtors, the Reorganized Debtors, their current and former directors and officers, or any other Person.

## ARTICLE VIII.
## DISTRIBUTIONS UNDER THE PLAN

**A.      Procedures for Treating Disputed Claims.**

1.      *Objections to Claims*.  Except insofar as a Claim is Allowed under the Plan, the Debtors, the Reorganized Debtors, and any other party in interest shall be entitled to object to Claims.  Any objections to Claims shall be filed and served by the Claims Objection Deadline.  Any Claims not objected to by the Claims Objection Deadline shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

2.      *Expungement and Disallowance of Claims*.

(a)      *Paid, Satisfied, Amended, Duplicate or Superseded Claims*:  Any Claim that has been paid, satisfied, amended, duplicated or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without the need for the Debtors to have filed an objection to such claim, and without any further action, order or approval of the Bankruptcy Court.

(b)      *Claims by Persons From Which Property Is Recoverable*:  Unless otherwise agreed to by the Reorganized Debtors or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under sections 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person or Entity has been resolved.

(c)      *Indemnification Claims*:  All Claims filed on account of an indemnification obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date, to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.

(d)      *Untimely Claims*:  Any Claim that was required to be filed by the Claims Bar Date, but was not timely filed, shall not be Allowed, shall be deemed disallowed, and

shall be forever barred, estopped and enjoined from asserting such Claim against the Debtors or the Reorganized Debtors, their respective affiliates, or their respective property, and such Claim shall be deemed discharged as of the Effective Date, unless otherwise ordered by a Final Order of the Bankruptcy Court.

3. *Amendments to Proofs of Claim*.  On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, as applicable, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

4. *No Distributions Pending Allowance*.  If an objection to a Claim or a portion thereof is filed as set forth in Article VIII herein or the Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

5. *Distributions After Allowance*.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the applicable provisions of the Plan and any order of the Court.

6. *Administration Responsibilities*.  Except as otherwise specifically provided in the Plan, after the Effective Date the Reorganized Debtors, with the consent of the Requisite Supporting Noteholders, shall have the sole authority to (a) file, withdraw or litigate to judgment objections to Claims, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, and (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court; *provided that* nothing in this Article VIII.8 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claim Objection Bar Date unless otherwise ordered by the Bankruptcy Court.

**B.    Allowed Claims.**

1. *Delivery of Distributions in General*.  Except as otherwise provided herein, Distributions under the Plan shall be made by the Disbursing Agent to the holders of Allowed Claims in all Classes for which a Distribution is provided in this Plan at the addresses set forth on the Schedules or in the Debtors' books and records, as applicable, unless such addresses are superseded by Proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Distribution Record Date (or at the last known addresses of such holders if the Debtors or the Reorganized Debtors have been notified in writing of a change of address).

2. *Delivery of Distributions to Holders of Second Lien Notes Claims and Subordinated PIK Notes Claims*. The Indenture Trustees shall act as Disbursing Agents for the purposes of Distributions to be made hereunder on account of each Second Lien Notes Claim

and Subordinated PIK Notes Claim in accordance with the terms of the Second Lien Notes Indenture or the Subordinated PIK Notes Indenture (as applicable and other than any subordination provisions therein) and the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Indenture Trustees shall not have any liability to any Person with respect to Distributions made or directed to be made by the Indenture Trustees.

3.      _Distribution of Cash_.  Any payment of Cash by the Reorganized Debtors pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtors.

4.      _Unclaimed Distributions of Cash_.  Any Distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall, pursuant to section 347(b) of the Bankruptcy Code, become the property of the Reorganized Debtors notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such Distribution or any subsequent Distribution on account of such Allowed Claim shall be extinguished and forever barred.

5.      _Distributions of New Equity Interests_. On or about the Effective Date, the Disbursing Agent shall distribute the New Equity Interests in accordance with Article IV.B of this Plan.

6.      _Unclaimed Distributions of New Equity Interests_.  Any Distribution of New Equity Interests under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall be retained by the Reorganized Debtors, notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such Allowed Claim to such Distribution or any subsequent Distribution on account of such Allowed Claim shall be extinguished and forever barred.

7.      _Saturdays, Sundays, or Legal Holidays_.  If any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

8.      _Fractional New Equity Interests and De Minimis Distributions_. Notwithstanding any other provision in the Plan to the contrary, no fractional units of New Equity Interests shall be issued or distributed pursuant to the Plan.  Whenever any Distribution of a fraction of a unit of New Equity Interests would otherwise be required under the Plan, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole unit (up or down), with half units or less being rounded down and fractions in excess of a half of a unit being rounded up.  No consideration will be provided in lieu of fractional units that are rounded down.  Fractional units of New Equity Interests that are not distributed in accordance with this Article VII.B.8 shall be cancelled.  The Reorganized Debtors shall not be required to, but may in

their sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

9.    *Distributions to Holders of Claims:*

(a)    *Initial Distribution to Claims Allowed as of the Effective Date*.  On or as soon as reasonably practicable after the Effective Date, or as otherwise expressly set forth in the Plan, the Disbursing Agent shall distribute Cash, New Equity Interests, or Collateral, as the case may be, to the holders of Allowed Claims as contemplated herein.

(b)    *Claims Allowed after the Effective Date*.  Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the Distribution to which such holder of an Allowed Claim is entitled as set forth in Article III, and Distributions to such holder shall be made in accordance with the provisions of this Plan.  As soon as practicable after the date that the Claim becomes an Allowed Claim, the Reorganized Debtors shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

10.    *Special Rules for Distributions to Holders of Disputed Claims*.  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims.  If the Debtors, Reorganized Debtors or any other party in interest dispute any General Unsecured Claim, such dispute shall be governed by Article VIII.A.3 hereof.

11.    *Interest on Claims* .  Except as specifically provided for in the Plan, no Claims, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on a Claim.

## C.    **Allocation of Consideration.**

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued, but unpaid interest, as applicable.

## D.    **Estimation.**

Prior to or after the Effective Date, the Debtors (with the consent of the Requisite Supporting Noteholders) or the Reorganized Debtors, as applicable, may (but are not required to), at any time, request that the Court estimate (i) any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or (ii) any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Court has ruled on any such objection.  The Court will retain jurisdiction to estimate any Claim at any time, including during

proceedings concerning any objection to such Claim. In the event that the Court estimates any Claim, such estimated amount shall constitute either (i) the Allowed amount of such Claim, (ii) the amount on which a reserve is to be calculated for purposes of any reserve requirement under the Plan or (iii) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes the maximum limitation on such Claim, the Debtors (with the consent of the Requisite Supporting Noteholders) or the Reorganized Debtors, as the case may be, may elect to object to any ultimate allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

E.      **Insured Claims.**

If any portion of an Allowed Claim is an Insured Claim, no Distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

F.      **Setoffs and Recoupments**

Each Reorganized Debtor, or such entity's designee (including, without limitation, the Disbursing Agent) as instructed by such Reorganized Debtor, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim, and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any and all claims, rights and Causes of Action that a Reorganized Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Reorganized Debtor or such entity's designee or its successor of any and all claims, rights (including, without limitation, rights of setoff and/or recoupment) and Causes of Action that a Reorganized Debtor or such entity's designee or its successor may possess against such holder. For the avoidance of doubt, the Distribution Trustee shall not have any authority to exercise any rights of the Debtors or Reorganized Debtors to setoff or recoupment.

G.      **Rights and Powers of Disbursing Agent**

1.      *Powers of Disbursing Agent*. The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

01:18082857.1

2.      *Expenses Incurred on or After the Effective Date*.  Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, reasonable attorney and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

3.      *Fees and Expenses of the Second Lien Indenture Trustee*.  All fees and expenses of the Second Lien Indenture Trustee must be paid in full in cash on the Effective Date.

## ARTICLE IX.
## EXECUTORY CONTRACTS

### A.      Assumption of Executory Contracts.

Unless an Executory Contract: (i) was assumed or rejected, as mutually agreed upon by the Debtors and the Requisite Supporting Noteholders; (ii) was previously expired or terminated pursuant to its own terms; (iii) is the subject, as mutually agreed upon by the Debtors and the Requisite Supporting Noteholders, of a motion to reject filed on or before the Confirmation Date; or (iv) is designated specifically or by category as an Executory Contract on the Schedule of Rejected Executory Contracts, each Executory Contract shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.  The assumption of Executory Contracts hereunder may include the assignment of certain of such contracts to the Debtors.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors, the Requisite Supporting Noteholders and the applicable counterparty, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or the validity, priority, or amount of any Claims that may arise in connection therewith.

### B.      Cure Claims.

1.      *Cure Payments*.  Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such Executory Contract, any monetary defaults arising under each Executory Contract to be assumed pursuant to the Plan (subject to the consent of the Requisite Supporting Noteholders) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "<u>Cure Amount</u>") in Cash on the later of thirty (30) calendar days after: (i) the Effective Date; and (ii) the date on which any

Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

2.      *Cure Schedule and Objections*.   No later than twenty-one (21) calendar days prior to the commencement of the Confirmation Hearing, the Debtors shall file a cure schedule (which shall be satisfactory in form, substance and amount to the Requisite Supporting Noteholders) and serve such cure schedule on each applicable counterparty.  Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within seven (7) Business Days before the Confirmation Hearing, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

3.      *Cure Disputes*.   In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, or the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption.  To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that such Debtor reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the Reorganized Debtors).  To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor or Reorganized Debtor, as applicable, such Debtor or Reorganized Debtor, as applicable, may reject the applicable Executory Contract after such determination.

To the extent applicable, any Executory Contracts, including related instruments and agreements, assumed or deemed assumed during the Chapter 11 Cases, shall be deemed modified such that the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach or default under, or increase, accelerate or otherwise alter any obligations or liabilities of the Debtors or the Reorganized Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Reorganized Debtors pursuant to, the applicable Executory Contract, and any consent or advance notice required under such Executory Contract shall be deemed satisfied by Confirmation.

On the Effective Date, each Executory Contract that is listed on the Schedule of Rejected Executory Contracts shall be deemed rejected or repudiated pursuant to Bankruptcy Code section 365.  Until the Effective Date, the Debtors, with the consent of the Requisite Supporting Noteholders, expressly reserve their right to amend the Schedule of Rejected Executory Contracts to delete any Executory Contract therefrom or to add any Executory Contract thereto.

01:18082857.1

All Claims arising from the rejection of Executory Contracts, if any, will be treated as General Unsecured Claims. All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective properties or interests in property. In the event that the rejection of an Executory Contract by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors on or before the date that is thirty (30) days after the effective date of such rejection (which may be the Effective Date or the date on which the Debtors reject the applicable contract or lease pursuant to an order of the Bankruptcy Court).

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE ANY OF THE DEBTORS OR THE REORGANIZED DEBTORS ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

Obligations arising under insurance policies assumed by any of the Debtors before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

C.    **Reservation of Rights.**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that any Debtor or Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors (with the consent of the Requisite Supporting Noteholders) or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

D.    **Assignment.**

Any Executory Contract to be held by any of the Debtors or the Reorganized Debtors and assumed hereunder or otherwise in the Chapter 11 Cases, if not expressly assigned to a third party previously in the Chapter 11 Cases, will be deemed assigned to the applicable

Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.  If an objection to a proposed assumption, assumption and assignment, or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable Executory Contract may be designated by the Debtors (with the consent of the Requisite Supporting Noteholders) or the Reorganized Debtors for rejection within five Business Days of the entry of the order of the Court resolving the matter against the Debtors.  Such rejection shall be deemed effective as of the Effective Date.

### E.    <u>Insurance Policies.</u>

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.  Unless otherwise determined by the Bankruptcy Court prior to the Effective Date, or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults (if any) of the Debtors existing as of the Effective Date with respect to each such insurance policy or agreement, and to the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Debtors' rights to seek the rejection of such insurance policy or agreement or other available relief within thirty (30) days of such determination are fully reserved; *provided, however*, that the rights of any party that issues an insurance policy or agreement to object to such proposed rejection on any and all grounds are fully reserved.  Nothing in the Plan, the Plan Documents, the Plan Supplement or the Confirmation Order (a) alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the insurance policies or agreements, (b) limits the Reorganized Debtors from asserting a right or claim to the proceeds of any insurance policy or agreement that insures any Debtor, was issued to any Debtor or was assumed by the Reorganized Debtors by operation of the Plan or (c) impairs, alters, waives, releases, modifies or amends any of the Debtors' or Reorganized Debtors' legal, equitable or contractual rights, remedies, claims, counterclaims, defenses or Causes of Action in connection with any of such insurance  policies or agreements.

### F.    <u>Post-Petition Contracts and Leases.</u>

All contracts, agreements, and leases that were entered into by one or more of the Debtors or assumed by any of the Debtors after the Petition Date shall be deemed assigned by the applicable Debtor(s) to the applicable Reorganized Debtor(s) on the Effective Date.

### G.    <u>Compensation and Benefit Programs.</u>

Except as such benefits may be otherwise terminated by the Debtors in a manner permissible under applicable law, or as may otherwise set forth in the Plan Supplement, all Existing Benefits Agreements shall be deemed assumed as of the Effective Date. Notwithstanding anything to the contrary contained herein, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

01:18082857.1

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(i)    to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which one or more of the Debtors or the Reorganized Debtors is party or with respect to which the Debtors or the Reorganized Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

(ii)    to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(iii)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(iv)    to resolve disputes as to the ownership of any Claim or Equity Interest;

(v)    to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(vi)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(vii)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(ix)    to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(x)    to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

(xi)    to hear and determine any issue for which the Plan requires a Final Order of the Court;

01:18082857.1

50

(xii)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii)    to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xiv)    to hear and determine any Causes of Action preserved under the Plan;

(xv)    to hear and determine any matter regarding the existence, nature, and scope of the Debtors' discharge;

(xvi)    to hear and determine all Causes of Actions for Covered Actions as provided in Article VII.G of the Plan;

(xvii)    to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(xviii)  to enter a final decree closing the Chapter 11 Cases;

(xix)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(xx)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(xxi)    to adjudicate any and all disputes arising from or relating to the Rights Offering Procedures;

(xxii)  to enforce all orders previously entered by the Court; and

(xxiii)  to hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the following documents entered into by the Reorganized Debtors on or after the Effective Date: (i) the New First Lien Notes Indenture, (ii) the New First Lien Notes Documents, (iii) the Organizational Documents for any of the other Reorganized Debtors, and (iv) the Reorganized NGR Holding Management Incentive Plan.

# ARTICLE XI.
# EFFECTIVENESS OF THE PLAN

## A.    Conditions Precedent to Effectiveness.

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article XI.B:

1.    the Confirmation Order entered by the Court shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Requisite Supporting Noteholders;

2.    the Confirmation Order shall have become a Final Order and shall not have been stayed, modified, or vacated;

3.    the Plan Supplement and the Definitive Documents (as such term is defined in the Restructuring Support Agreement), shall be in form and substance consistent with the Restructuring Support Agreement and otherwise satisfactory to the Debtors and the Requisite Supporting Noteholders and shall have been executed and delivered, and any conditions precedent contained to effectiveness therein having been satisfied or waived in accordance therewith;

4.    all other actions, documents, certificates, and agreements necessary to implement the Plan, each in form and substance satisfactory to the Debtors and the Requisite Supporting Noteholders. shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

5.    all necessary authorizations, consents, and all governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan, if any having been obtained and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

6.    the Reorganized Debtors shall have executed the New First Lien Notes Indenture and all other New First Lien Notes Documents, and all conditions precedent to effectiveness and issuance of the New First Lien Notes (including the issuance of the DIP Exchange Notes) shall have been satisfied or waived in accordance with the terms of the New First Lien Notes;

7.    (i) the Restructuring Support Agreement shall not have been terminated in accordance with the terms thereof, and the Restructuring Support Agreement shall be in full force and effect, and (ii) all conditions to closing set forth in the Restructuring Support Agreement shall have been satisfied or waived in accordance with its terms;

8.    (i) the Backstop Agreement shall not have been terminated in accordance with the terms thereof, and the Backstop Agreement shall be in full force and effect, and (ii) all conditions to closing set forth in the Backstop Agreement shall have been satisfied or waived in accordance with its terms; and

9.    all unpaid Transaction Expenses shall have been paid pursuant to the applicable fee letters of such professionals.

**B.    Waiver of Conditions Precedent to Effectiveness.**

The Debtors, with the prior written consent of the Requisite Supporting Noteholders, may waive conditions set forth in Article XI.A above at any time without leave of or order of the Court and without any formal action.

If any condition precedent to the Effective Date is waived pursuant to this Section Article XI.B. and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of this Plan shall foreclose any ability to challenge this Plan in any court.

**C.    Effect of Failure of Conditions.**

In the event that the Effective Date does not occur on or before [•], but in no event later than [•], upon notification submitted by the Debtors (with the consent of the Requisite Supporting Noteholders) to the Court: (i) the Confirmation Order may be vacated, (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

**D.    Vacatur of Confirmation Order.**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver, release, or discharge of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the holder of any Claim or Equity Interest; (iii) prejudice in any manner any right, remedy, or claim of the Debtors; or (iv) be deemed an admission against interest by the Debtors.

**E.    Modification of the Plan.**

Subject to the limitations contained in the Plan, and subject to the terms of the Restructuring Support Agreement, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, with the prior written consent of the Requisite Supporting Noteholders, to amend or modify the Plan prior to the entry of the Confirmation

Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, with the prior written consent of the Requisite Supporting Noteholders, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Confirmation Order shall authorize the Debtors or the Reorganized Debtors, as the case may be, with the consent of the Requisite Supporting Noteholders, to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, and/or the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided, however, that such action does not materially and adversely affect the treatment of the Class of holders of Allowed Claims or Equity Interests pursuant to the Plan.

## F.    Revocation, Withdrawal, or Non-Consummation.

1.    *Right to Revoke or Withdraw*. The Debtors (with the prior written consent of the Requisite Supporting Noteholders) reserve the right to revoke or withdraw the Plan at any time before the Effective Date; *provided*, *however*, that this provision shall have no impact on the rights of the Ad Hoc Committee, as set forth in the Restructuring Support Agreement, in respect of any such revocation or withdrawal.

2.    *Effect of Withdrawal, Revocation, or Non-Consummation*. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation, or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

## A.    Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors. The rights, benefits and obligations of any Entity

named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**B.        Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

**C.        Filing or Execution of Additional Documents.**

On or before the Effective Date or as soon thereafter as is practicable, the Debtors or the Reorganized Debtors shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which agreements and documents shall be in form and substance satisfactory to the Requisite Supporting Noteholders.

**D.        Term of Injunctions or Stays.**

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**E.        Withholding and Reporting Requirements.**

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any United States federal, state, local, or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions.

**F.        Exemption From Transfer Taxes.**

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property effectuated under this Plan, including without limitation (i) the issuance, transfer, or exchange under the Plan of New Equity Interests, and the security interests in favor of the lenders under the New First Lien Notes Documents, (ii) any assumption, assignment, and/or sale of the Debtors' interests in unexpired leases of non-residential real property or executory contracts, or (iii) the making or delivery of any other

instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

### G.    Dissolution of Creditors' Committee

The Creditors' Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member (including each officer, director, employee or agent thereof) of the Creditors' Committee and each Professional retained by the Creditors' Committee shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their membership on the Creditors' Committee, the Plan or the Chapter 11 Cases, *except* with respect to any matters concerning any Fee Claims held or asserted by any Professional retained by the Creditors' Committee.

### H.    Severability

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (upon the prior written consent of the Requisite Supporting Noteholders) shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### I.    Plan Supplement.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The documents contained in the Plan Supplement shall be available online at www.pacer.gov and cases.primeclerk.com/newgulf. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors.  The Debtors reserve the right, in accordance with the terms hereof, and with the prior written consent of the Requisite Supporting Noteholders, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed and shall promptly make such changes available online at www.pacer.gov and cases.primeclerk.com/newgulf.

### J.    Notices.

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have

01:18082857.1

been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Each of such notices shall be addressed as follows:

119.  *To the Debtors*: NGR Holding Company LLC, 10441 S Regal Blvd #210, Tulsa, OK 74133, Attn: Danni Morris, Tel.: (918) 728-3020, with a copy to Baker Botts L.L.P., 2001 Ross Avenue, Dallas, Texas 75201, Attn:  C. Luckey McDowell, Tel.: (214) 953-6500, Fax: (214) 953-6503, e-mail: luckey.mcdowell@bakerbotts.com.

120.  *To the Ad Hoc Committee*: Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Erez Gilad, Esq., Tel: (212) 806-5881, Fax: (212) 806-7881, e-mail: egilad@stroock.com.

121.  *To the U.S. Trustee*: Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Tel.: (302) 573-6491, Fax: (302) 573-6497.

**K.**     **Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement.  In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

01:18082857.1

Dated: December 17, 2015

**NGR HOLDING COMPANY LLC**
**on behalf of itself and all other Debtors**


By: _/s/ Danni Morris_
Name:  Danni Morris
Title:  Chief Financial Officer