**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEW GULF RESOURCES, LLC, *et al.* | ) | Case No. 15-12566 (BLS) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: January 19, 2016 at 12:00 p.m. (ET)** |
| | ) | **Objection Deadline: January 12, 2016 at 4:00 p.m. (ET)** |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**BAKER BOTTS L.L.P. AS COUNSEL**
**FOR THE DEBTORS AND DEBTORS IN POSSESSION**

New Gulf Resources, LLC ("New Gulf") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this application (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Baker Botts L.L.P. ("Baker Botts") to serve as the counsel to the debtors and debtors in possession.  In support of this Application, and pursuant to Local Rule 2014-1, is the Declaration of C. Luckey McDowell in Support of Retention of Baker Botts LLP as Counsel to Debtors and Debtors-In-Possession (the "Retention Affidavit"), attached hereto as **Exhibit B** and the declaration of Danni Morris, Chief Financial Officer of New Gulf and its affiliate chapter 11 debtors, which is attached hereto as **Exhibit C** (the "Morris Declaration").  In further support of this Application, the Debtors rely upon the *Declaration of Danni Morris in Support of the First Day Motions* (the "First Day Declaration") [Docket No. 13] and respectfully state as follows.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  NGR Holding Company LLC (1782), New Gulf Resources, LLC (1365); NGR Finance Corp. (5563) and NGR Texas, LLC (a disregarded entity for tax purposes).  The Debtors' mailing address is 10441 S. Regal Boulevard, Suite 210, Tulsa, Oklahoma 74133.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1.

## BACKGROUND

4.      On December 17, 2015 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Cases.  The Debtors are operating as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      For a more detailed description of the Debtors, their business and capital structure, and the events giving rise to the Chapter 11 Cases, please see the First Day Declaration.

## RELIEF REQUESTED

6.     By this Application, the Debtors seek entry of the Order authorizing the retention and employment of Baker Botts as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Baker Botts dated December 17, 2015 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to Exhibit A to the Application and incorporated herein by reference.

## BAKER BOTTS' QUALIFICATIONS

7.     The Debtors seek to retain Baker Botts because of Baker Botts' recognized expertise and extensive experience in the oil and gas industry and with debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.  With restructuring professionals in Texas and New York, Baker Botts has been actively involved in major chapter 11 cases and has represented debtors and significant stakeholders in many cases, particularly in the energy industry.  Most recently, Baker Botts served as debtors' counsel to: (i) Global Geophysical Services, a publicly-traded global oil and gas seismic company that reorganized and exited bankruptcy in February 2015; (ii) Hercules Offshore, Inc., a publicly-traded global oil and gas services company in its prepackaged bankruptcy that concluded in November 2015; (iii) ASARCO, a multi-billion copper mining company; and (iv) Pacific Lumber Company, a redwood timber and lumber company with one of the last company-owned towns in America.  Baker Botts also has substantial experience in large buy-side bankruptcy representations, including counsel to NRG Energy, Inc. in its $2.6 billion acquisition of Edison Mission Energy in 2014 and counsel to Hunt Consolidated in the Energy Future Holdings cases in the District of Delaware, one of the largest bankruptcy cases in recent memory.

8.     Baker Botts has represented the Debtors since May 2015, providing a wide array of legal services to the Debtors, including financial restructuring, corporate, finance, tax, and

3

employee benefits.  In preparation for this filing, Baker Botts also advised the company in connection with the Company's extensive negotiations with the secured lenders and prepared the Debtors for an orderly transition into chapter 11, including preparing most of the operative chapter 11 filings and related pleadings.  Baker Botts possesses a specialized knowledge of the Debtors' businesses, assets and liabilities, the Debtors' secured lenders, the Debtors' deleveraging strategies, and many of the legal issues that may arise in the context of the Chapter 11 Cases.  For these reasons, the Debtors believe that Baker Botts is well-qualified to represent the Debtors in the Chapter 11 Cases in an efficient and timely manner.  In the Debtors' opinion, retaining another law firm with the qualifications, knowledge of the Debtors' assets, and resources to handle this complex case would result in a loss of significant institutional knowledge and would be prohibitively expensive.  The Debtors are nevertheless sensitive to costs and will monitor work streams among Baker Botts and their Delaware counsel, Young Conaway Stargatt & Taylor, LLP, so as to avoid duplication of effort.

### SERVICES TO BE PROVIDED

9.      Subject to further order of the Court and consistent with the Engagement Letter, the Debtors request the retention and employment of Baker Botts to render the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning

litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with negotiation, documentation and obtaining authority to enter into financing arrangements as may be required, including but not limited to, cash collateral agreements or financing documents;

g.      advising the Debtors in connection with any potential sale of assets or strategic transaction involving the Debtors or their assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of the Chapter 11 Cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## PROFESSIONAL COMPENSATION

10.      Baker Botts intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  Except as explained with respect to the Fee Premium (as defined below), the hourly rates and corresponding rate structure Baker Botts will use in the Chapter 11 Case are comparable to the hourly rates and corresponding rate structure that Baker Botts uses for its work in other bankruptcy and non-bankruptcy matters, regardless of whether a fee application is required.  These rates and the rate structure reflect that Baker Botts' work is often

national in scope and involves great complexity, high stakes, and severe time pressures.  Baker

Botts will maintain detailed, contemporaneous records of time and any actual and necessary

expenses incurred in connection with the rendering of the legal services described above by

category and nature of the services rendered.

11.     Baker Botts operates in a national marketplace for legal services in which rates

are driven by multiple factors relating to the individual lawyer, his or her area of specialization,

the firm's expertise, performance, and reputation, the nature of the work involved, and other

factors.  Prior to the Petition Date, Baker Botts charged the Debtors at a preferred rate that

incorporates a discount of approximately 10-15% off of Baker Botts' standard billing rates.

Baker Botts has represented to the Debtors that the preferred rate discount is not routinely

offered to potential debtor clients in the current environment.

12.     In accordance with guidance from the Supreme Court and the Fifth Circuit (and

subject to approval by this Court), Baker Botts has modified its postpetition fee structure to

account for the payment uncertainty associated with representing a debtor in bankruptcy.

Subject to the conditions noted below, Baker Botts' aggregate fees incurred during the

bankruptcy will be increased by 10% (the "Fee Premium"), aligning its bankruptcy fees more

closely to its standard billing rates.

13.     There are two notable conditions to the Fee Premium.  First, although the Fee

Premium will be earned as services are provided, no portion of the Fee Premium will be payable

until and unless the Bankruptcy Court enters an order approving Baker Botts' final fee

application.  Second, Baker Botts will waive its right to the entire Fee Premium if, and only if,

Baker Botts does not incur material fees and expenses defending against any objection with

respect to an interim or final fee application.  If Baker Botts incurs material fees or expenses,

Baker Botts will not waive the Fee Premium regardless of the outcome of the objection. The Bankruptcy Court will make the determination as to whether any such fees and expenses are in fact material for the purposes of the Fee Premium. The Debtors' ability to object to, dispute, or otherwise challenge Baker Botts' fees is fully preserved.

14.    The fee structure outlined above fairly compensates Baker Botts for the litigation risk associated with collection of its fees incurred as Debtors' counsel and comports with the Supreme Court's recent ruling in *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158 (2015). In *ASARCO*, the Supreme Court held that the Bankruptcy Code does not "permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings." *Id.* at 2164. This ruling prohibits debtors' counsel from seeking reimbursement of fees incurred defending fee applications, but it does not mean that debtors' attorneys cannot take into account the possibility of fee litigation when setting rates, as illustrated by colloquy during oral argument at the Supreme Court. During the government's argument on behalf of the Office of the United States Trustee, Justice Scalia suggested that debtors' attorneys could raise their rates to account for the litigation risk associated with bankruptcy fee applications:

| Scalia, J.: | [ . . . ] I assume that the [hypothetical] lawyer's fees are set at a high enough level that it -- that they take into account the fact that sometimes you will have to litigate the fees. |
|---|---|
| Fletcher: | That's true. |
| Scalia, J.: | And why can't bankruptcy lawyers do the same thing? [2] |

The government responded that such a fee increase would be contrary to bankruptcy policy:

| Fletcher: | Well, I think that would be contrary to the policy of the -- of the bankruptcy statute and *[sic]* Section 330(a) in particular. [3] |
|---|---|

---

[2]    Transcript of Oral Argument at 23, *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158 (2015).

However, the Supreme Court rejected Baker Botts' and the government's reading of section 330, and instead suggested that debtors' attorneys increase their fees to a level that contemplates a litigation risk.  The underlying Fifth Circuit opinion contemplates—and even predicts—a similar fee adjustment.  Commenting on the idea that defending fee applications is a "cost of doing business," the Fifth Circuit suggests that "[w]hen firms become aware [of the rule in *ASARCO*], they can anticipate this possibility in their hourly rates."[4]

15.     The Fee Premium structure applies the teachings of the Supreme Court and the Fifth Circuit in a way that minimizes the impact on the Debtors' estates.  Although Baker Botts might be justified in collecting the premium whether or not it faces objections to its fees, Baker Botts will not collect the premium unless it in fact incurs <u>material</u> fees or expenses incurred for defending fee objections.  In the event that objections are filed, the Fee Premium adequately compensates Baker Botts for the <u>litigation risk</u> associated with defending its fees, without compensating for the actual cost of defense.  Although fee objections and the incurrence of material defense costs trigger the Fee Premium, the Fee Premium itself does not improperly compensate a firm for defending its fee application.  Subject to the triggering event, the Fee Premium is a binary concept; it either is earned in full or not at all.  Therefore the Fee Premium incorporates the risk-pricing element predicted and encouraged by the appellate courts, without providing for a dollar-by-dollar reimbursement to accomplish what section 330 would otherwise prohibit.  The Fee Premium structure also minimizes the risk of meritless objections pursued as a litigation tactic against Baker Botts or the Debtors.  And, by permitting the Bankruptcy Court to determine whether the materiality threshold is met, Baker Botts balances the goal of fair compensation against the possibility of an unintended windfall caused by a non-material fee

---

[3]    *Id.* at 23-24.
[4]    *In re ASARCO LLC*, 751 F.3d 291, 301 & n.7 (5th Cir. 2014)

objection.  The Debtors ask that the Court approve the Fee Premium structure in accordance with the terms of the Engagement Letter.

16.     Baker Botts' standard hourly rates for 2016 range as follows:

| Billing Category | Range |
|---|---|
| Partners | $800.00 - $1,300.00 |
| Special Counsel | $600.00 - $1,000.00 |
| Associates | $425.00 - $725.00 |
| Paraprofessionals | $165.00 - $325.00 |

17.     The following professionals presently are expected to have primary responsibility for providing services to the Debtors, and their respective 2016 rates (excluding application of the Fee Premium) for this matter are set forth below:

| Timekeeper | Rate |
|---|---|
| Luckey McDowell (Restructuring) | $775 |
| Jim Prince (Restructuring) | $875 |
| Steve Marcus (Tax) | $1,050 |
| Andrew Thomison (Finance) | $675 |
| Bryan Henderson (Transactional) | $550 |
| Meggie Gilstrap (Restructuring) | $550 |

18.     In addition, as necessary, other Baker Botts professionals and paraprofessionals will provide services to the Debtors.[5]

19.     Baker Botts' hourly rates are set at a level designed to fairly compensate Baker Botts for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

---

[5]     Although Baker Botts does not anticipate using contract attorneys during the Chapter 11 Cases, in the unlikely event that it becomes necessary to use contract attorneys, Baker Botts will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Baker Botts will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[6]     Baker Botts will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any increases in excess of its 2016 rates.

20.     It is Baker Botts' policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Baker Botts' policy to charge its clients only the amount actually incurred by Baker Botts in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

## COMPENSATION RECEIVED BY BAKER BOTTS FROM THE DEBTORS

21.     As of the filing of the petitions, the Debtors did not owe Baker Botts any amounts for legal services rendered.

22.     Baker Botts has not yet completed its final reconciliation of expenses because Baker Botts' policies require that attorneys submit expense reports for reimbursement after incurring the expense.  As a result, some prepetition expenses remained outstanding as of the Petition Date.  For example, Baker Botts attorneys traveled to New York for the entire week immediately prior to the Petition Date to complete negotiations with the Ad Hoc Committee (as defined in the First Day Declaration) and prepare the bankruptcy filing.  The expenses associated with this trip will not appear in Baker Botts' expense accounting system for several days or weeks, even though the expenses were incurred prepetition.  Baker Botts will reconcile all outstanding prepetition expenses by application of its prepetition retainer to those amounts. Details regarding such final reconciliation will be included in Baker Botts' first application for interim compensation.

23.     Baker Botts has provided, and agrees to continue to provide, assistance to the Debtors in accordance with the terms and conditions set forth in the Application and Engagement Letter.

24.     Pursuant to Bankruptcy Rule 2016(b), Baker Botts has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Baker Botts or (b) any compensation another person or party has received or may receive.

## BAKER BOTTS' DISINTERESTEDNESS

25.     To the best of the Debtors' knowledge and as disclosed herein and in the Retention Affidavit, (a) Baker Botts is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates, and (b) Baker Botts has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Retention Affidavit.

26.     Baker Botts will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Baker Botts will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## SUPPORTING AUTHORITY

27.     The Debtors seek retention of Baker Botts as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

28.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

29.     The Debtors submit that for all the reasons stated above and in the Retention Affidavit, the retention and employment of Baker Botts as counsel to the Debtors is warranted. Further, as stated in the Retention Affidavit, Baker Botts is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Retention Affidavit.

<u>NOTICE</u>

30.     The Debtors will provide notice of this Motion to the following or their counsel: (i) the Office of the United States Trustee for the District of Delaware; (ii)  MidFirst Bank, the administrative agent under the Debtors' First Lien Credit Agreement; (iii) Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent under the Second Lien Notes; (iv) Bank of New York Mellon Trust Company, N.A., as trustee under the Subordinated PIK Note Indenture; (v) the Ad Hoc Committee; (vi) the Debtors' 30 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; and (vii) those parties who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors believe that the notice provided for herein is fair and adequate and no other or further notice is necessary.

## <u>NO PRIOR REQUEST</u>

31.    No prior request for the relief sought in this Application has been made to this or any other court.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: December 19, 2015

Danni Morris
Chief Financial Officer of NGR Holding Company
LLC, on behalf of the Debtors